## Saylor *v.* Greenville Steel Car Co., Appellant et al.

332

Argued April 18, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Thomas H. Armstrong,* for appellant.

*John V. Wherry,* for appellee.

OPINION BY HIRT, J., July 19, 1945:

On the testimony of claimant and one medical expert, the referee made an award for the specific loss of use of claimant's left eye, under §306(c) of the Workmen's Compensation Act as amended June 21, 1939, P. L. 520,

77 PS §513. The board affirmed, and the court entered judgment on the award. The questions are: Was there an accident and, if so, is the testimony legally sufficient to establish a causal connection between the accident and total loss of sight?

Claimant for some years had been employed by Greenville Steel Car Company and on July 1, 1941 was a helper on a press shaping metal into usable form. It was claimant's duty to remove super-heated pieces of metal from a nearby furnace by means of tongs, and to convey them to the press for processing. The door of the furnace was two feet wide and about four feet from the ground. Claimant is a tall man and, standing directly in front of the opening, it was necessary for him to stoop with his head lowered, to look into the furnace and to pick up a piece of the metal with the tongs. He was not supplied with goggles and the glasses which he wore were no protection to his eyes because of the position of his head. The temperature of the furnace, under forced draft, ran as high as 2,400 degrees fahrenheit. Claimant testified that when he opened the furnace door "a flash of flame whipped out and stung me in both eyes." He described the flash as a "tongue of flame ...... a mixture of air and gas, like a blow torch." He felt a stinging sensation in both eyes and at once was conscious of injury. The right eye was not permanently affected but he was immediately blinded in the left eye and has never regained sight in that eye. Claimant reported the circumstances and his condition to his employer two days later. At the hearing in this proceeding, he did not call the company doctor, to whom he had been referred, because that doctor was unable to connect the blindness with the flame from the furnace, and two other physicians who had examined claimant, shortly after the occurrence, were in military service and were not available. The one medical expert who testified, saw claimant only a few days before the hearing. A complete cataract,

which formed, had made the loss of useful vision of the eye, permanent. Claimant continued to work, without loss of time, for sixteen days until July 17, 1941, when he was discharged because of his impaired vision, and consequent danger of injury in the performance of his duties.

There is sufficient proof of an accident in claimant's uncontradicted testimony. Of course, an accident cannot be inferred in this case merely from the loss of sight. But in claimant's testimony that a tongue of flame from the furnace "stung" him in the eye, there is direct proof of an accident. Bodily contact with a substantial material object is not essential to proof of an accident. "An accident is an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforeseen": *Adamchick v. Wyoming Val. Col. Co.*, 332 Pa. 401, 3 A. 2d 377. Compensable personal injury includes bodily harm accidentally caused by external violence or physical force regardless of its source. Thus, "a stroke by lighting, a stroke from the direct rays of the sun, a heat stroke, or heat prostration, are untoward, unexpected mishaps and accidental injuries within the meaning of the [Workmen's Compensation] act": *Lane v. Horn & Hardart B. Co.*, 261 Pa. 329, 104 A. 615. *Trovato v. W. J. McCahan Sugar Ref. Co.*, 122 Pa. Superior Ct. 499, 186 A. 163. There is no difference, in principle, between heat causing a general physical collapse and a tongue of flame which destroys the function of but one organ of the body. Both are accidents and resulting death or injury are equally compensable under the act. Accepting claimant's testimony in this case, as we must, we find in it clear proof of an accident.

It may be conceded that the testimony of Dr. D. A. Brown, claimant's sole medical witness, does not meet the degree of proof necessary to establish a causal connection between the accident and the loss of sight of the eye. *Vorbnoff v. Mesta Machine Co.*, 286 Pa. 199,

133 A. 256. In response to a hypothetical question he said: "The flame might have had something to do with it—if it is intense, knife like, it could have injured the internal part of the eye." He also testified: "Cataracts in people of his age, due to an injury, can come in half an hour, or they can be months in coming." Q. "Doctor, would he have had a cataract immediately after this flash or explosion?" A. "No, not necessarily. If his eye was injured from this, it was injured in the back part of the eye, probably a detachment of the retina, a rupture of the retina, or a hemorrhage, something of that kind, in which the vision would gradually disappear, maybe rather suddenly. This cataract could develop as a result of that." The cataract precluded an examination of the inner eye but this witness said of the condition as he observed it: "It looks like an injury to me ...... It looks like a traumatic cataract." While this testimony does not supply unequivocal expert opinion evidence of a causal connection between the accident and a resulting injury to the eye, this is not a case where such proof is essential to recovery. The applicable rule of personal injury actions in trespass is also the law in workmen's compensation cases. And it is settled that the decisions where expert testimony must be relied on to show causal connection do not "apply to injuries which are so immediately and directly, or naturally and probably, the result of the accident that the connection between them does not depend solely on the testimony of professional or expert witnesses": *Davis v. Davis,* 80 Pa. Superior Ct. 343. Where "there is such close connection between the accident and the injury as to satisfy a reasonable person as to the cause of the injury, the relation between the two is sufficiently shown:" *Palermo v. N. East Preserving Wks. Inc.,* 141 Pa. Superior Ct. 211, 15 A. 2d 44. Application of the rule appears in *Paul v. Atlantic Refining Co.,* 304 Pa. 360, 156 A. 94, in *Illingworth v. Pittsburgh Rys. Co.,* 331 Pa. 369, 200 A. 89, and more recently in *Tabuteau v.*

*London G. & A. Co., Ltd.*, 351 Pa. 183, 40 A. 2d 396. Here, as in the last cited case, "the sequence of events strongly indicates a causal connection between the entirely unexpected injury and the continuous disability following it." Claimant's eye was not diseased and a slight impairment of vision, natural to one of his age, had been corrected by glasses. There is no evidence of a prior incipient cataract or of causes which might have produced it. Blindness in a normal healthy eye, resulted immediately following the accident and the loss of vision is permanent. The reasonable inference that loss of sight was the natural result of the accident is entirely consistent with the testimony of the medical expert. A physician's opinion may be strengthened by what actually happened. *Illingworth v. Pittsburgh Rys. Co.*, supra; similarly, such expert testimony is competent to support inferences which properly may be drawn from events in their logical sequence.

Judgment affirmed.