Meehan *v.* Philadelphia, Appellant.

Argued October 2, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Thomas A. Masterson,* Deputy City Solicitor, with him *Myron Harris* and *Gordon Cavanaugh,* Assistant City Solicitors, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for appellant.

*Harry R. Back,* for appellee.

OPINION BY HIRT, J., November 13, 1956:

Claimant had been a patrolman in the employ of the City of Philadelphia for twenty years, and he was on active duty on August 26, 1951. On that day he with another police officer was assigned to an Emergency Patrol Car. While responding to a radio call their patrol car collided with another car at Eleventh and Vine Streets in Philadelphia. Meehan was thrown from the police car to the street by the force of the impact. His injuries consisted in two broken ribs, a wrenched or twisted back and ruptured blood vessels in both legs. He was taken to Hahnemann Hospital

for treatment but was discharged later on the same day. Prior to the accident claimant was active and he regularly performed the duties of a patrolman. Thereafter he was unable to do any work because of the injuries to his lower back.

Under date of January 16, 1952, almost five months after the injury there appeared in the medical record of the Police Surgeon for the first time a reference to "long standing hypertension". Claimant was treated for this condition at Philadelphia General Hospital until February 7, 1953. On February 14, 1953 he received from the Police Commissioner notice of his honorable discharge for the reason that he was "physically unable to properly perform the duties of a policeman." He received full wages until shortly before his discharge; claimant in this proceeding sought compensation for total disability from January 17, 1953.

The referee found that claimant was totally disabled as a result of the accident of August 26, 1951, and made an award. The board on appeal concluded that the claimant had "adequately shown a causal connection between the accident and his injury" and accordingly affirmed the referee's findings of fact, conclusions of law and the award. The lower court entered judgment on the award. In this appeal the city contends that since the claimant did not present medical evidence tending to connect his disability with the back injury, the award cannot stand in the face of affirmative medical opinion evidence produced by defendant that claimant's disability was due to a hypertensive cardiovascular disease.

The findings in this case, supported as they are by sufficient competent evidence, bring it within the well established rule of law that where there is such close connection between the accident and the injury as to satisfy a reasonable mind as to the cause of the injury,

medical testimony is not necessary to establish causation as a foundation for an award. Thus in *Saylor v. Greenville Steel Car Co.*, 157 Pa. Superior Ct. 331, 43 A. 2d 633 in affirming an award we held that a causal connection was sufficiently shown between the accident and the loss of the use of an eye without expert medical testimony to that effect where the disability immediately followed the accidental injury. So also in *Palermo v. N. East Preserving Works Inc.*, 141 Pa. Superior Ct. 211, 15 A. 2d 44 in the application of the rule we affirmed a judgment on an award for total disability based solely on the circumstances establishing a close connection between the accident and the injury. In the present case the symptoms were all subjective but that is not unusual where disability results from injury to the lower back.

The time element determines the applicability of the rule. And it is only where symptoms follow the accident within a comparatively short time—and for that reason warrant a finding that the claimant's condition was caused or aggravated by the injury—that medical testimony is unnecessary to establish causation. *De Beaumont v. Brown*, 104 Pa. Superior Ct. 158, 158 A. 643. In *Anthony v. Lee Coal Company*, 168 Pa. Superior Ct. 397, 77 A. 2d 657 the claimant after his injury on May 17, 1948 returned to his regular work seven days later and continued to be so employed until September 2, 1948. He subsequently claimed compensation for a recurrence of disability beginning with that date. In sending the case back to the board on a reversal of the judgment entered on an award we held that "the sequence of events [was] too tenuous to connect the disability beginning in September of 1948 with the accident" and that under the circumstances of the case, unequivocal. medical testimony of a causal connection between the accident and the alleged recurrence of dis-

ability was essential to an award. So also in *Beck v. Franklin Glass Corp.*, 136 Pa. Superior Ct. 204, 7 A. 2d 600 where the claimant had suffered from arthritis (a condition entirely absent in the instant case) prior to an accidental fall, the burden was on him to establish by expert medical testimony that his disability was due to the accident. Under such circumstances the opinion of a claimant or other lay witness as to causation would have been valueless.[1] In *Bannon v. Pittsburgh*, 145 Pa. Superior Ct. 201, 21 A. 2d 500 it appeared that a fireman following an unusual exposure to wet and cold while attending a fire suffered an infection of the nose and throat; approximately two and one-half years later he died from peritonitis following an appendectomy. We reversed a judgment entered on an award of compensation benefits in favor of the widow claimant for want of expert medical testimony establishing that the accident materially contributed to the disease as the sole or at least a superinducing cause of the death of claimant's husband.

The above and other similar cases relied on by appellant do not rule this appeal. There is no dispute that claimant worked steadily up to the time of the accident and he never worked afterward. His total dis-

---

[1] Cf. Fractures Dislocations and Sprains (Key and Conwell) 5th ed., p. 388, where it is stated: "One of the most perplexing problems in orthopedic and industrial surgery is pain in the low back. In this region of the spine, we have the lower lumbar and lumbosacral articulations and the sacroiliac joints, any of which may be responsible for pain. In industrial and accidental cases we also have the difficulty of determining whether or not the patient's symptoms are faked or exaggerated, and, if the patient has symptoms, whether or not they are due to postural defects, to trauma, or to arthritis. If arthritis is present, we are confronted by the questions of whether or not the arthritis is caused by the strain or whether a preexisting painless arthritis has been aggravated by the trauma to such an extent that it now causes pain and disability".

ability began immediately following the accident and has continued without interruption. Shortly after the accident—within five weeks—according to the testimony, claimant started wearing a brace on his back to relieve the pain and has worn it ever since. It was not until January 16, 1952, five months after the accident, that a reference to claimant's "long standing hypertension" appeared in the record of the case in the Police Surgeon's office. Claimant did not call the assistant surgeon from that office who treated him; but neither did the city. And the only doctor that the city did call was one who had never seen the claimant and who testified from the record of proceedings before the compensation authorities and from nothing more.

Bearing in mind that on appeal the evidence and the inferences therefrom must be viewed in the light most favorable to the claimant (*Melini v. Saltsburg C. Min. Co.*, 119 Pa. Superior Ct. 356, 181 A. 330) and that it is within the province of the board to weigh the evidence and to accept or reject the testimony of any witness, even of a medical expert (*Malik v. Uniontown*, 172 Pa. Superior Ct. 562, 94 A. 2d 151) we are obliged to affirm the judgment in this case.

Judgment affirmed.