Karasciewicz, Appellant, *v.* Crown Can Company.

Argued September 15, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

Judgment affirmed.

*Alexander F. Barbieri,* for appellant.

*Peter P. Liebert, 3rd,* with him *John J. McDevitt, 3rd,* for appellees.

OPINION BY GUNTHER, J., November 14, 1958:

This appeal is from the judgment of the court below in which the action of the Workmen's Compensation Board was sustained. On September 25, 1943, claimant's husband, Walter Karasciewicz, was injured at Crown Can Company as a result of a blow to his head from a heavy, sharp-edged metal truck handle. He suffered a laceration on the head and brain concussion for which he was hospitalized at the Metropolitan Hos-

pital, where he remained until September 28, 1943. After his discharge from the hospital, he remained at home until October 17, 1943, when he returned to work and worked until March 18, 1944. On March 19, 1944, claimant's husband was admitted to the Philadelphia General Hospital for mental disorder. From there, he was transferred to the Philadelphia State Hospital (Byberry), on April 3, 1944, with a diagnosis of dementia praecox, catatonic type, where he was treated until October 2, 1944. On this date, he was paroled for a period of a year but was readmitted on September 23, 1945. Two days later, he was again paroled and kept on the rolls of the hospital as an out-patient until January 5, 1947, when it became necessary to readmit him as a confined case. He has remained there ever since.

On July 25, 1944, a claim petition was filed by claimant, Sophie Karasciewicz, as guardian ad litem of Walter Karasciewicz, claiming that her husband's mental disability was caused, aggravated or precipitated by the accident.

Hearings on said petition were had on December 18, 1945, November 25, 1946, February 24, 1948, April 28, 1949, January 18, 1950, April 25, 1950, October 24, 1950 and February 1, 1951. On July 31, 1951, the referee filed his decision, awarding partial disability compensation for certain periods and total disability compensation following January 1, 1947. Defendants, Crown Can Company and Employers Liability Assurance Corp., Ltd., appealed from this award to the Board, alleging error in awarding compensation beyond October 17, 1943. On May 14, 1952, the Board sustained defendants' appeal and limited compensation liability to the period from September 25, 1943 to October 17, 1943. From this decision, claimant appealed to the Court of Common Pleas of Philadelphia County

and on July 31, 1953, the court set aside the action of the Board and remitted the record for further proceeding. On November 18, 1953, the Board remanded the record to a different referee for the purpose of taking the testimony of an impartial physician, and also authorized the parties to introduce any other testimony that they might desire to present. Subsequent to taking additional testimony, the referee allowed compensation to October 17, 1943 and disallowed compensation thereafter. Claimant appealed this decision to the Board. On February 9, 1955, the Board again remanded the case to the referee to permit claimant's attorney to present such additional testimony as he may desire to present. On August 5, 1955, the referee again stated that the award of May 14, 1954, allowing compensation only to October 17, 1943, should remain in effect. Claimant again appealed to the Board and on December 14, 1955, the Board affirmed the referee's award. Claimants appealed to the court below which sustained the appeal and remanded the record to the Board to consider the whole record and make findings, conclusions and order as are justified thereunder. On September 5, 1956, the Board unanimously reaffirmed the findings of the referee. Claimant again appealed to the court below. On February 18, 1958, the award of the Board was sustained and the appeal was dismissed. Hence this appeal.

The testimony disclosed that Walter Karasciewicz was first employed by Crown Can Company on August 12, 1942. At the time of the accident, he was employed as a slitting machine operator, earning $47.93 per week. The testimony also disclosed that *prior* to such employment, the employe was suffering from mental disorder. On September 23, 1941, he was admitted to Philadelphia General Hospital and was kept there until December 17, 1941, during which time he received

electric shock treatments. He was discharged in custody of his wife. On March 3, 1942, he was again admitted for further electric shock treatments and was again discharged or paroled, on April 17, 1942, in the custody of his wife. At these times, his condition was diagnosed as dementia praecox and schizophrenia. It became important, therefore, to determine whether this employe was cured prior to his employment with Crown Can Company, or whether this mental illness, claimed to have been caused, aggravated or precipitated by the accident of September 25, 1943, reoccurred as a direct result of and caused by the trauma received in the accident.

The claimant's case was based on the testimony of two medical experts, Dr. Herbert J. Darmstadter and Dr. H. C. Bell, neuropsychiatrists, who testified in response to hypothetical questions propounded to them. Both testified as to a causal connection between the trauma and the relapse of schizophrenia. Dr. Darmstadter was asked to assume that the employe remained home for a period of seven months after the accident and that his condition was entirely normal on September 25, 1943. The record discloses, however, that neither assumption was correct; that the employe worked from October 17, 1943 to March 1944 and that even prior to the accident, he showed definite signs of abnormality such as refusal to talk, refusal to stop work during lunch, working beyond normal quitting time, refusal to pick up his pay unless someone actually took him to receive his pay and, during work, in lifting large quantities of tin plate "that was almost beyond human belief." Dr. Bell was asked to assume that the employe went back to work following the blow on his head and that he was observed to be a different person by his co-employes and that he experienced no difficulties at his place of employment before the accident. The rec-

ord, however, disclosed that the changes were taking place prior to the accident and continued after the accident. Dr. Bell, in forming his opinion, stated that he was assuming that immediately prior to the accident, the employe was a good employe and adjusted to his routine, and further assumed that only after the accident did he go on a "downhill course."

Appellees produced three psychiatrists who had treated Karasciewicz to establish that the employe's disability was indicative of the natural progress of schizophrenia and unrelated to any trauma. Dr. George B. Peatrick, a psychiatrist of the Philadelphia State Hospital, testified that when the employe was admitted on April 3, 1944, the diagnosis was dementia praecox, catatonic type, which he described as a "disease characterized by refusal of the individual to talk at times, evasion, confused periods, and being subject to imagination. In his case he was hallucinated in the auditory sphere." Dr. Ralph C. Kell, a neuro-psychiatrist on the staff of Philadelphia General Hospital and who treated Karasciewicz upon his first admission to that institution on September 23, 1941, diagnosed his condition as schizophrenia which he did not consider curable; that there are remissions in the disease and that such people have periods of comparative lucidity. Dr. Louis P. Costanzo, from Philadelphia State Hospital, actually cared for Karasciewicz part of the time he was in that institution. He stated that he first saw the employe on April 15, 1944 and his last examination was on February 1, 1951, when he testified. He concluded that the patient was essentially the same as at the time of his admission. He also stated that there are no known causes for this schizophrenia, and concluded that it is extremely unlikely that the blow received would hasten one in a period of remission back into a psychotic state.

Finally, Dr. Winifred Stewart, the impartial expert appointed by the Board testified that she examined Karasciewicz on January 9, 1954; that she reviewed and considered the records of admissions and discharges from the various hospitals; that she considered the testimony produced at prior hearings and concluded that there is no evidence that the employe's mental state was either precipitated or made chronic by the head injury. She further testified that there were no signs of any organic involvement of the central nervous system or evidence of a post-traumatic type of mental deterioration; that there was no evidence upon which to base an assumption that the mental symptoms showed by the employe after the head injury were due to a relapse into the schizophrenic state and that the employe was suffering from a chronic schizophrenia, the onset of which occurred in the latter part of 1941, and that the head injury neither precipitated his relapse nor contributed to the apparent chronicity of the disease.

From all the evidence produced, the Board concluded that the employe suffered from chronic schizophrenia since 1941 and that the accident in 1943 did not precipitate his later disability which resulted from the chronic schizophrenia alone.

Since this was a claim petition and the appellees contested every allegation thereof, the burden of proof was upon the claimant and this burden did not shift. We have stated repeatedly that the burden of proving a causal relationship between an accident and the alleged disability is on the claimant. *Witters v. Harrisburg Steel Corp.*, 183 Pa. Superior Ct. 450, 132 A. 2d 762; *Darmopray v. Budd Mfg. Co.*, 169 Pa. Superior Ct. 200, 82 A. 2d 341; *Anthony v. Lee Coal Company*, 168 Pa. Superior Ct. 397, 77 A. 2d 657; *Euker v. Welsbach Street Lighting Co. of America*, 149 Pa. Superior

Ct. 78, 25 A. 2d 758. Since the decision of the Board was against the claimant who had the burden of proof, the only question before us is whether the findings of fact are consistent with each other and with the conclusions of law, and whether the Board's findings can be sustained without a capricious disregard of the competent evidence.

The medical evidence here presented was in serious conflict. The Board, out of an abundance of caution and in an effort to ascertain the real cause of disability, appointed an impartial medical expert. We cannot say that the opinion of such medical expert should be disregarded by the Board. Any weakness or discrepancy in such testimony, as in all medical testimony, is for the Board to believe or disbelieve. As we said in *Allen v. Patterson-Emerson-Comstock, Inc.*, 186 Pa. Superior Ct. 498, 142 A. 2d 437, the medical testimony being in conflict, the credibility of the medical experts and the issues created by them is for the compensation authorities. And if the findings are supported by sufficient competent evidence and the law properly applied, their judgment is binding upon us. See also *Lorigan v. W. O. Gulbranson, Inc.*, 184 Pa. Superior Ct. 251, 132 A. 2d 695; *Malik v. City of Uniontown*, 172 Pa. Superior Ct. 562, 94 A. 2d 151.

We cannot weigh conflicting evidence and decide what inferences shall be drawn from the testimony before the Board. *Carnachione v. Hotel William Penn*, 184 Pa. Superior Ct. 26, 132 A. 2d 400. However, appellant contends that the inference drawn by the Board is erroneous because both Dr. Kell and Dr. Stewart, at least in part, based their opinions on evidence which should not have been permitted. Appellant objected to the introduction of hospital records and the history contained therein given by the claimant. This history was taken by an interne who did not testify but the

records were otherwise properly proved. The wife's statement relating to the condition of the employe appears to have been recorded at the time it was made and there appears to be no motive to falsify either upon the interne or the wife when it was given and recorded. Furthermore, the wife had knowledge of the facts contained in the statement and her husband, because of his condition, could not give any statement. As a matter of fact, she testified at the hearings not inconsistent with such statements at least in part. This record, including the history was admissible under the Uniform Business Records as Evidence Act of 1939, May 4, P. L. 42, 28 P.S. section 91(b). *Underhill v. Cantalano*, 185 Pa. Superior Ct. 155, 137 A. 2d 857; *Platt v. John Hancock Mutual Life Insurance Co.*, 361 Pa. 652, 66 A. 2d 266; *Freedman v. Mutual Life Insurance Co.*, 342 Pa. 404, 21 A. 2d 81.

Upon a careful review of the facts and circumstances of this case, we cannot say that the Board acted without competent evidence introduced in the record and we cannot say that its findings and conclusions were contrary to law. We therefore must agree with the disposition made by the court below.

Judgment affirmed.