Seidel *v.* Yeadon Borough, Appellant.

46

Argued September 16, 1959. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*Ernest L. Green,* with him *Butler, Beatty, Greer & Johnson,* for appellant.

*Harry J. Gerber,* with him *Rocap & Rocap,* for appellees.

Opinion by Wright, J., November 11, 1959:

On January 2, 1955, about eight o'clock p.m., Marian A. Seidel sustained injuries as the result of a fall on the sidewalk along Gunther Avenue in the Borough of Yeadon. She and her husband, Theodore B. Seidel, instituted a trespass action against the borough, and also against Robert D. Edelman, alleged to be the tenant of the premises abutting on the sidewalk. The borough joined Martin Koehler and Anna Koehler, his wife, and also Bernard Azarva, as additional defendants. The Koehlers owned the premises in question and Azarva, not Edelman, was actually the tenant. The action was thereafter discontinued as to Edelman. At the trial a nonsuit was entered as to Azarva. The jury returned a verdict in favor of the Seidels in the total sum of $1,500.00 against the borough, and a verdict in favor of the Koehlers so far as liability over to the borough was concerned. The court en banc subsequently granted Seidels' motion for a new trial, and this appeal by the borough followed.[1]

Mrs. Seidel testified as follows: "My foot went in the hole. My ankle turned over and my weight went down on the right leg . . . Well, I had two very badly

---

[1] The new trial was awarded "as between the plaintiffs and the Borough of Yeadon only". Judgment was entered on the verdict in favor of the Koehlers, and the borough has not appealed in that regard.

lacerated knees in addition to the fact that I could not stand on my foot at all". She was immediately treated by a physician who bandaged the ankle and applied medication to the knees. An x-ray taken the next day was negative as to fracture or dislocation. Mrs. Seidel continued to suffer extreme pain, particularly in the calf of the leg. "Of course the leg at this time was too swollen and too sore to put down on the sheet and the heel was propped so that the leg would be up in the air. I couldn't stand it to touch the sheet or I couldn't stand any covers on it". The result was that Mrs. Seidel was confined to her bed for a month, and eventually was required to take a sabbatical leave from her position as a school teacher. She had previously enjoyed good health. Her physician testified that he originally "found a sprained right ankle", but that phlebitis subsequently developed in the calf of the leg. The physician was not asked whether the phlebitis was caused by the accident.

The record discloses that, after the testimony was closed, points for charge were handed to the trial judge by defense counsel, including point 5 set forth in the footnote.[2] When counsel for the plaintiffs began his summation to the jury, defense counsel raised the objection that there was no testimony that the phlebitis was caused by the accident. Counsel for the plaintiffs then requested permission to reopen the case. The trial judge refused this request, and directed counsel for plaintiffs "to confine himself only to the sprained

[2] "5. The Plaintiffs have not fulfilled their burden of proving that the phlebitis which the wife Plaintiff allegedly suffered eight days after her alleged fall was caused by the fall. Since they have not proved any causal connection between the fall and the phlebitis, you may not take into consideration any of the damages, pain or suffering, or any other claim for damages including loss of earnings as a result of this phlebitis condition."

ankle and the claims arising as a result thereof". The record discloses that, after plaintiffs' counsel resumed his summation, there were repeated interruptions by defense counsel. The trial judge at one point stated that "we have just gotten into a situation in this case that has never happened in all my experience both as a lawyer and a judge". In his charge to the jury the trial judge said: "Therefore you may not take into consideration any of the damages, pain or suffering or any other claims for damages, including loss of earnings, as a result of the phlebitis, but must confine yourself to those elements arising from the sprained ankle". At the conclusion of the charge, he affirmed point 5 as submitted by defense counsel.

The opinion for the court en banc, written by the trial judge, sets forth that, in instructing the jury, "the court failed to take into consideration" the rule that expert testimony to establish causal connection between accident and injury is not required where the injury is so closely connected with the accident as to satisfy a reasonable person regarding the relationship between them.[3] The opinion further indicates that the position taken by the trial judge in the conduct of the trial "was too strict and may have resulted in injustice". We note in this connection the refusal to permit plaintiffs' counsel to re-open the case. To the foregoing was added "the fact that plaintiffs' counsel forthrightly stated that he intended to ask the question of his medical expert and being an experienced lawyer cannot account for his failure to do so".

---

[3] See, inter alia, *Schultz v. Pivar*, 370 Pa. 271, 88 A. 2d 74; *Meehan v. Philadelphia*, 182 Pa. Superior Ct. 161, 126 A. 2d 488; *Tabuteau v. London G. & A. Co.*, 351 Pa. 183, 40 A. 2d 396; *Saylor v. Greenville Steel Car Co.*, 157 Pa. Superior Ct. 331, 43 A. 2d 633.

The legal principles governing appeals of this nature are well settled and need not be restated at length. In *Mohr v. Plotkin,* 186 Pa. Superior Ct. 615, 142 A. 2d 414, we said: " 'One who appeals from the grant of a new trial assumes a very heavy burden indeed. Before we will reverse, the appellant must be able to show that the trial court was guilty of a palpable abuse of discretion or acted on an erroneous rule of law which, in the circumstances, controlled the outcome of the case and is certified by the trial court as the sole reason for the granting of a new trial': Mozino v. Canuso, 384 Pa. 220, 120 A. 2d 300. See also Muroski v. Hnath, 392 Pa. 233, 139 A. 2d 902. The presumption is that the trial court was justified in granting a new trial even when the reason given is insufficient, unless it is stated to be the only reason: Bellettiere v. Philadelphia, 367 Pa. 638, 81 A. 2d 857. See also Class & Nachod Brewing Co. v. Giacobello, 277 Pa. 530, 121 A. 333; Marko v. Mendelowski, 313 Pa. 46, 169 A. 99. The grant of a new trial in an action of trespass because the trial judge feels. that he did not properly instruct the jury does not constitute an abuse of discretion: Joannides v. Norris, 337 Pa. 234, 11 A. 2d 139. And see Pleasant v. Carr, 387 Pa. 634, 130 A. 2d 189". The trial court has an immemorial right to grant a new trial whenever, in its opinion, the justice of the particular case so requires: *Fisher v. Brick,* 358 Pa. 260, 56 A. 2d 213.

Appellant argues that expert testimony as to causal connection was required in the case at bar because the phlebitis did not appear until eight days after the accident, and might have been the result of "other natural or normal causes", citing *Florig v. Sears, Roebuck and Co.,* 388 Pa. 419, 130 A. 2d 445; *Menarde v. Philadelphia Trans. Co.,* 376 Pa. 497, 103 A. 2d 681. Appellant further argues that failure of counsel for plaintiffs to prove an important part of his case is "not

grounds for awarding a new trial", citing *Gorgerat v. McCarty*, 1 Yeates 252; *C. Vernon Rettew Co. v. Heller*, 82 Pa. Superior Ct. 286; and *Cunningham v. Ray*, 263 Pa. 492, 106 A. 884. While these arguments are not persuasive in the circumstances presented by this record, and the cited cases can be distinguished both factually and procedurally, it is of controlling significance that appellant fails to answer the position of the court below that the conduct of the trial resulted in injustice.

We are clearly of the opinion that there was no abuse of discretion in the grant of a new trial in the instant case.

Order affirmed.