194 Pa. Superior Ct. 263 (1960)
Smith, Appellant,
v.
Pullman-Standard Car Manufacturing Co.
Superior Court of Pennsylvania.
Argued November 14, 1960.
December 14, 1960.
*264 Before RHODES, P.J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.
Hymen Schlesinger, for appellant.
Richard A. Gray, Jr., with him P.K. Motheral, and Reed, Smith, Shaw & McClay, for appellee.
OPINION BY WRIGHT, J., December 14, 1960:
This is a workmen's compensation case in which the Referee and the Board found that claimant's present disability, if any, is not attributable to the accident alleged. Compensation was therefore disallowed on the ground that claimant had failed to carry his burden *265 of proof. Upon appeal to the County Court of Allegheny County, claimant's exceptions were overruled and judgment was entered in favor of the defendant. This appeal followed.
The record discloses that Pullman-Standard Car Manufacturing Company was engaged in the business of manufacturing railroad cars. Appellant was employed as an acetylene burner. His claim petition averred that, on August 2, 1956, he was pushing a car floor and "was caused to slip". The nature of his injury was not set forth. The employer filed an answer demanding proof of an accident, asserting that appellant refused medical services, that he worked from the time of the alleged accident until the time of filing the claim petition, except for normal lay-offs, and that he was still employed in his regular job with no diminution of earnings.
Appellant testified before the Referee as follows: "Well, I was a burner there, a heater on this job. I didn't have to push on this job, and it was over the dinner hour, and some guy wanted a push and I gave him a push, and my foot slipped off a high tie and something hit me in the leg and two guys grabbed me to keep me from falling down and they said do I want a stretcher and I said no. . . I hobbled from there to the dispensary".[1] Appellant thereafter received some payments under a health insurance policy carried by the employer. It was admitted by appellant that he had not suffered any reduction in pay.
*266 Appellant's medical witness, Dr. Ralph M. Christie, made his initial examination on February 28, 1957. At that time, appellant complained that he was unable to get his right heel down properly, that it felt as though the tendon in the back was short. Dr. Christie testified as follows (italics supplied): "Q. What were your findings? A. Well, I found he had a particular area of some small size in the Achilles tendon, there seemed to be a calcified area in that tendon probably the size of a large thumb nail, something about that size. It seemed hard and gave the feel of a calcification in that particular tendon. Q. From your examination and your findings, would you say that such a condition could have arisen from the type of accident he had? A. Yes, could have arisen from that. He described the accident and that might have caused a partial rupture of the Achilles tendon that could produce calcification in that area. . . Q. When was the last time you examined him? A. November, 1957. Q. And what were your findings then? A. He still had this calcified area in the tendon and complained of inability to get about, that he had a feeling of shortness in the Achilles tendon. . . Q. Did Mr. Smith advise you at the time of his first visit that he twisted his foot as it slipped off a tie while pushing a car? A. That was the history of the accident he gave. Q. And on the basis of that history, you determined that this condition existed as a result of it? A. I determined that the condition was a result of it. I said it was very probable and highly possible that it could have occurred. I don't know that he didn't injure his ankle someplace else but he gave this history and the fact that he had developed this, I assumed that it was a result of that. Q. Did he give a history of a later accident after this particular one? A. Don't recall any other".
The employer's medical witness, Dr. Edward Lutton, testified as follows: "Q. When did you treat him? *267 A. Actually, I first examined him in the early part of August, 1956, during the period in which he was laid off and he reported on August 2 that he had sprained his ankle. We saw him about five days later during which time we examined and x-rayed him. Found moderate swelling of the ankle and a developing small mass in the lower third of the gastrocnemius muscle. At that time he refused whirl pool bath, preferring to consult his own doctor, at which time we took x-ray films. Q. At the time of this examination, did you find anything wrong with the Achilles tendon? A. No. Q. Did you examine the Achilles tendon? A. Yes. Q. Was there any swelling at that time? A. At that time, yes. Q. Did you see him later? A. Yes. Q. When did you see him next? A. I again examined him on May 1, 1957, at which time we received a history that he had been treated by Dr. Christie, Dr. Ruff, and Dr. Bashline. One of these physicians made diagnosis of ruptured Achilles tendon. Q. Did you find any symptoms? A. I found no evidence of that but did find a healing hematoma in the gastrocnemius muscle, which in our opinion is similar to a black eye or bleeding due to a tear in a blood vessel, and they usually heal without difficulty, the blood in the tissue is absorbed. We made measurements on this patient at that time and took additional x-rays, in which his mid-calf and all the measurements of the leg and ankle showed no difference between the left and the right. We again examined him on June 5, 1957 and he still was convinced that there was a rupture of the Achilles tendon due to the diagnosis made by one of his physicians. However, in that condition, the patient is unable to extend the foot on the ankle, and he had never lost this ability. Any rupture of the Achilles tendon results in a dropped foot. At that time, we again felt that small nodule in the middle of the muscle and the leg. . . we again examined him on March 4, 1959, at which *268 time he was complaining of fatigue, shortness of breath, and soreness of his right leg. We again took x-ray of the right foot, ankle. Review of all these x-rays taken at that time taken from the time of injury revealed no evidence of calcification of the tendon of the Achilles or in the muscle. Sometimes a hematoma will calcify rather than absorb. We did find minimal arthritic changes in the foot and ankle which you would expect in a man of this age group. He has had an elevated blood pressure for sometime and runs an average of 206/104. He has been receiving medical treatment for the high blood pressure. . . Q. You say that the disability this man is now suffering is due to natural causes rather than to any injury he has suffered? A. I believe the reason is because of age change, fast pace, together with blood pressure, obesity, and arthritic changes".
Appellant's contentions are (1) that the action of the compensation authorities in dismissing the claim petition "is erroneous in fact and law"; (2) that the Board erred in finding no causal connection between the accident and the condition found by claimant's physician; and (3) that the failure of the Board "to make findings in reference to the credibility of claimant and his physician requires remand of the record if this Court feels that the present record is insufficient to support an award in favor of claimant".
Appellant's first two contentions may be treated together. The burden was upon appellant to prove a causal relationship between the accident and the alleged disability: Karasciewicz v. Crown Can Co., 188 Pa. Superior Ct. 212, 146 A. 2d 87. It is the prerogative of the compensation authorities, and not the court, to weigh the testimony of witnesses and to accept or reject it either in whole or in part: Chuplis v. Steve Shalamanda Coal Co., 192 Pa. Superior Ct. 76, 159 A. 2d 520. Even uncontradicted testimony need not be accepted as *269 true: Zilek v. C.C. Coal Co., 186 Pa. Superior Ct. 628, 142 A. 2d 507. In a conflict of medical opinion, it is the province of the compensation authorities to decide which conclusion will be adopted: Erwin v. L. & H. Construction Co., 192 Pa. Superior Ct. 632, 161 A. 2d 639. The circumstances of the instant case required unequivocal medical testimony: Anthony v. Lee Coal Co., 168 Pa. Superior Ct. 397, 77 A. 2d 657. See also Meehan v. Philadelphia, 182 Pa. Superior Ct. 161, 126 A. 2d 488; Elonis v. Lytle Coal Co., 134 Pa. Superior Ct. 264, 3 A. 2d 995. It is readily apparent that the testimony of Dr. Christie falls short of the standard set forth in Washko v. Ruckno, 180 Pa. Superior Ct. 606, 121 A. 2d 456, in which case we held that, where medical testimony is necessary to establish causal connection, the medical witness must testify, not that the injury or condition might have, or even possibly did, come from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause.
In support of his third contention, appellant cites Gavula v. Sims Co., 155 Pa. Superior Ct. 206, 38 A. 2d 482, and Bogan v. Smoothway Const. Co., 183 Pa. Superior Ct. 170, 130 A. 2d 207. These cases do not uphold the new and unique concept which appellant has advanced. In the Gavula case, the record was remanded to the Board to make specific findings of fact in support of its judgment. See The Pennsylvania Workmen's Compensation Act of June 2, 1915, P.L. 736, Section 427, 77 PS 877. In the Bogan case, a majority of this court felt that the Board's findings were likewise insufficient. We expressly rule in the instant case that the Board was not required to make a specific finding with regard to the credibility of appellant and his medical witness.
To summarize, we may well repeat what we recently said in Wehr v. Phila. Derrick & Salvage Corp., 192 *270 Pa. Superior Ct. 161, 159 A. 2d 924, as follows: "Claimant has the burden to prove all of the elements necessary to support an award. We must view the evidence in the light most favorable to the party having the Board's decision. Where the Board has made a determination against the party having the burden of proof, the question before the Court on appeal is whether the Board's findings of fact are consistent with each other and with its conclusions of law, and can be sustained without a capricious disregard of the competent evidence. It was for the Board as the final fact finding body to determine from all the evidence whether claimant had sustained the burden resting upon her, and its finding that she had not is a pure finding of fact. . . In the light of these well-established principles, we perceive no error in the decision of the court below. There is no material inconsistency in the findings and conclusions of the Board in the instant case, nor is there a capricious disregard of competent evidence".
One incidental matter should be mentioned. At the time of oral argument, appellant requested permission to, and subsequently did, file a petition to remand for additional evidence "to determine extent of disability". To this petition the employer filed an answer. Had appellant sought a re-hearing, he could have petitioned the Board at any time before final action was taken by the County Court under Section 426 of the Act (77 PS 871). Passing appellee's argument that "there is no statutory basis for claimant's petition to remand the case for additional evidence at this stage of the appeal", we do not perceive that a remand to determine the extent of disability would be warranted in view of the finding of fact made by the compensation authorities that the disability of which appellant presently complains is not attributable to the accident.
The petition to remand is dismissed, and the judgment is affirmed.
NOTES
[1] Appellant also testified that, one day in February 1957, "I twisted my ankle all over again". However, a motion made at the hearing to amend the claim petition to include a second accident was subsequently refused by the Referee on the grounds that "claimant has not shown, by clear, concise, and positive proof, that any accidental injury occurred on that date". No question in this regard has been raised on the present appeal.