Conard, Appellant, *v.* Duffy.

Argued September 11, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

Before PIEKARSKI, J.

*Joseph R. Siegert,* for appellant.

*Richard I. Torpey,* with him *Martin Techner,* and *Techner, Rubin & Shapiro,* for appellees.

Opinion by Wright, J., November 16, 1961:

On July 9, 1959, Norman E. Conard instituted an action in assumpsit against Thomas J. Duffy and Eleanor H. Duffy, his wife, upon a written instrument executed by the defendants as follows: "Jan. 23rd 1958 —I O U Norman E. Conard, Four Thousand Dollars ($4000.00). This is to be repaid at $100.00 per month". The defense was failure of consideration. The trial resulted in a verdict for the plaintiff in the face amount of the instrument. The court en banc thereafter granted defendants' motion for a new trial on the ground that the verdict was against the weight of the evidence. The plaintiff has appealed.

The record discloses that Thomas J. Duffy operated a business at 825 Garrett Road, Upper Darby, Pennsylvania, trading under the fictitious name of Edward A. Duffy and Son. The nature of the business was the sale and installation of window shades, venetian blinds, and floor coverings. For some twelve years prior to January 23, 1958, Conard was employed in the business at a weekly salary, first of $40.00 and later $50.00. Conard testified that he was in fact a salesman and was to receive, in addition to his salary, a commission of ten percent on all venetian blind orders and five percent on all linoleum orders. The theory of the defendants was that Conard was not employed as a salesman, that his compensation was limited to his weekly salary, and that there were to be no commissions. The business eventually became financially involved. Sometime in the year 1957, when internal revenue agents were preparing to make a levy for nonpayment of federal taxes, Conard loaned Duffy $900.00. This indebtedness was evidenced by a judgment note, the final payment on which was made November 22, 1957. With regard to the I.O.U., the subject matter of the instant action, Conard testified that it was a compromise in settlement of commissions due. Duffy

testified to the contrary that, on January 22, 1958, Sheriff's deputies were in the process of making two levies, that Conard voluntarily offered to arrange a loan up to $4000.00, that the I.O.U. was executed at Conard's direction so that he (Conard) could show it to his bank, that Conard failed to get the money from the bank, and later tried without success to get the money from relatives in Atlantic City. Duffy's theory was supported by a number of exhibits, and his testimony was substantiated in material aspects by the testimony of Earl J. Plowman, a fellow employe of Conard, and also by the testimony of Eleanor Duffy. Aside from the written instrument, Conard's case rested entirely upon his own testimony.

In his opinion for the court en banc the trial judge states that "he and the other members of the court en banc concluded that the verdict was against the weight of the evidence, was shocking to the judicial conscience, and must have been capricious". Then follows a painstaking outline of the reasons for such a conclusion, which we will briefly summarize. (1) It is highly improbable that Conard was to receive commissions in view of his admission that he did not request payment thereof for a period of ten years, that he kept no account, and was not certain of the amount. (2) While Duffy was engaged with the sheriff's deputies, Conard handed him a card on which he had written "up to $4000". In the words of Judge PIEKARSKI, "Were it for any agreed compromise, the words 'up to' would have been omitted. Indeed, the card itself would have been completely meaningless had there been the alleged compromise". (3) The variance between Conard's testimony and his complaint. For example, his testimony differed from his complaint on the percentage of commissions. Again, Conard alleged in his complaint that a consideration for the I.O.U. was "that he would not voluntarily leave his employment with defendant",

whereas his employment was admittedly being terminated by the closing down of the business. Further Conard testified that the compromise covered vacation pay, on which matter the complaint is entirely silent. (4) The testimony of Earl J. Plowman and Eleanor Duffy which, in the light of the sharp conflict in the testimony of the principals, led the court en banc to conclude "that the fair preponderance of the weight of plaintiff's testimony was not only impaired in comparison with defendants' testimony, but left the factors in the case so weakly in support of plaintiff's theory of the case that the verdict shocks our judicial conscience".

One of the least assailable grounds for the exercise of the power to grant a new trial is the trial court's conclusion that the verdict is against the weight of the evidence: *Hartigan v. Clarke,* 389 Pa. 283, 133 A. 2d 181. A grave responsibility rests upon the trial judge to see to it that no verdict contrary to the weight of the evidence or shocking to judicial conscience is allowed to stand: *Maloy v. Rosenbaum Co.,* 260 Pa. 466, 103 A. 882. It is the duty of the trial judge to grant a new trial when he is convinced that the judicial process has resulted in the working of an injustice: *Kiser v. Schlosser,* 389 Pa. 131, 132 A. 2d 344. The grant of a new trial is an inherent power and immemorial right of the trial court, and an appellate court will not find fault with the exercise of such authority in the absence of a clear abuse of discretion: *Frank v. Losier & Co.,* 361 Pa. 272, 64 A. 2d 829. As stated by Mr. Justice Bok in *Hancock v. Moore,* 404 Pa. 47, 171 A. 2d 182, "We do not disturb the discretionary grant of a new trial lightly or unless it has been done capriciously or with palpable abuse of discretion". See also *Lupi v. Keenan,* 396 Pa. 6, 151 A. 2d 447; *Seidel v. Borough of Yeadon,* 191 Pa. Superior Ct. 45, 155 A. 2d 370; *Olynik v. Luce,* 192 Pa. Superior Ct. 312, 162 A. 2d 259.

Counsel for appellant argues that the matters of credibility and fact-finding were solely the province of the jury, and that a new trial should not be granted because of a mere conflict in testimony, or because the trial judge on the same testimony would have arrived at a different conclusion. He cites *Jones v. Williams,* 358 Pa. 559, 58 A. 2d 57; *Decker v. Kulesza,* 369 Pa. 259, 85 A. 2d 413; *City Products v. Bennett Bros.,* 390 Pa. 398, 135 A. 2d 924; *Springer v. Allegheny County,* 401 Pa. 557, 165 A. 2d 383; *Segriff v. Johnston,* 402 Pa. 109, 166 A. 2d 496; *Ropele v. Stewart,* 185 Pa. Superior Ct. 522, 137 A. 2d 895; *Wenham Transportation, Inc. v. Radio Construction Co.,* 190 Pa. Superior Ct. 504, 154 A. 2d 301. It is true that the appellate court does not entirely abdicate its reviewing function in cases of this nature. In the *Jones* case it was held by a divided court that, in granting a new trial, the court below had invaded the province of the jury. The other cases cited are substantially to the same effect. However, they are not controlling in the instant situation. Here pertinent is the statement of our Supreme Court in *Campbell v. Philadelphia Transportation Co.,* 366 Pa. 484, 77 A. 2d 437, as follows: "In the instant case the evidence is in complete conflict. Neither in this conflicting testimony, nor in any part of this record, have we been able to find any settled facts that so strongly support plaintiff's case as to persuade us that the trial court has abused its discretion". See also *Gougher v. Hansler,* 388 Pa. 160, 130 A. 2d 150; *Clewell v. Pummer,* 388 Pa. 592, 131 A. 2d 375.

"One who appeals from the grant of a new trial assumes a very heavy burden indeed": *Mozino v. Canuso,* 384 Pa. 220, 120 A. 2d 300. We are all of the opinion that appellant has failed to sustain that burden. Our review of this record does not reveal any abuse of discretion in the grant of a new trial.

Order affirmed.