## Gouldner *v.* Seltzer Coal Company et al., Appellants.

Argued June 10, 1959.   Before RHODES, P.J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*E. Mac Troutman,* for appellants.

*H. G. Stutzman,* with him *Henry Houck,* and *Stutzman, Lewis & Sidoriak,* for appellee.

OPINION BY ERVIN, J., July 3, 1959:

In this workmen's compensation case for the accidental death of the claimant's husband, the referee, the board and the court below all found for the claimant.

Decedent was 58 years of age and was employed at the coal breaker of the defendant company on October 31, 1956. At about 9:30 a.m. on that day he was found by Walter Golba, a fellow employe, with his body almost completely submerged in a water tank used in the process of cleaning coal. He was able to keep his head above the water by clinging with one hand to a wooden walk surrounding the tank. At the time he was conscious and told Golba that he "slipped and fell into the tank." He was immediately taken to the hospital where he died the following day. During his trip to the hospital and after arrival there he remained conscious and was able to answer questions. Dr. Nosal, who examined him at the hospital, testified that the injuries consisted of a cerebral contusion, tremendous swelling of the right cheek, severe contusions of the right eye and left hemiplegia. The only question is whether there is sufficient competent evidence to sustain the findings of fact and the award as made.

Dr. C. W. Miller, family physician, testified that he had examined the decedent a few weeks prior to the accident and had found no evidence of hypertension or

heart disease. The members of his family and fellow workers testified that upon the day of the alleged accident he appeared in the best of health and in good spirits with no indication of being ill. He worked every day that work was available to him and during the past 42 years he was absent from work for a period of approximately four weeks as a result of having pneumonia.

Dr. Nosal testified in direct examination as follows: "Q. What was the cause of death? A. His head injury." In answer to a hypothetical question based upon the facts of this case, Dr. Nosal testified that the head injuries were a marked contributory factor causing death. On cross-examination the doctor testified as follows: "Q. Do you know whether this man had another hemorrhage? What caused his death? A. Cerebral contusion. Q. That's connecting it with the accident. Medically, what was the cause of death? A. Cerebral contusion. Q. What is cerebral contusion? A. Blow to the head. The brain is encased in a bony case. You needn't have a fracture to kill a man. It's a sudden jar pushing the soft brain against this bony thing, like that (indicating). Q. How can you state that there was a cerebral contusion in this case? A. Because of external injuries. Q. Well, you assume that there was a cerebral contusion because of external evidence? A. Evidence of severe injury. Q. Was an autopsy performed? A. No, there wasn't. Q. In the absence of an autopsy, in all honesty, can you professionally state as a fact that there was a cerebral contusion? . . . . A. I cannot say with absolute certainty, but clinically I would say yes. BY REFEREE KRASNO: Q. That's your best professional opinion? A. Yes. . . . . Q. Now, that cerebral thrombosis, we can agree, in your opinion occurred prior to the fall? A. I didn't say that. Q. Clinically, that is your belief, isn't it? A. No, it isn't.

Q. It isn't? A. No, I don't know when this occurred. It may have occurred coming over in the ambulance. Q. And it may have occurred—A. I wasn't there picking him out of the tank. Q. It may have occurred before he fell in the tank? A. It may have. You prove it. . . . . MR. TROUTMAN: I want to ask him, therefore, how he attributes the death to the fall if, in fact, the cerebral thrombosis may have preceded the fall and caused the death. A. Well, here's a man previously healthy. He comes in with a head like this (indicating). BY MR. SCHRAGER: Q. Indicating what? A. Injury to the face and injury to the scalp, and the guy dies, and I think the man dies from head injury. BY MR. TROUTMAN: Q. Isn't it true that the only way that the fact could be ascertained is by autopsy? A. Definitely determined, yes. Q. Isn't that true? A. That's true. Q. Isn't the expression of any opinion one way or the other, in the absence of an autopsy, at best, a professional guess? A. I wouldn't call it a guess. Q. It's less than professional opinion? A. It's an impression. Q. And it's something less than a definite professional opinion, isn't it? A. Yes." In our opinion the doctor did not compromise or contradict his previously expressed opinion as to the cause of death. He merely stated that the cause of death could only be definitely determined by an autopsy but it was his professional opinion from the clinical examination that the death was caused by the cerebral contusion.

Treating this case as one which requires medical testimony to establish the causal connection between the accident and the death, we agree with the appellant that a medical witness must testify that it is his professional opinion that the result in question did come from the assigned cause. A less direct expression of opinion does not constitute legally competent evidence: *Washko v. Ruckno, Inc.*, 180 Pa. Superior Ct.

606, 609, 121 A. 2d 456. All of us agree that Dr. Nosal's testimony was sufficient to meet the above mentioned test. From a fair reading of all of his testimony, it is our conclusion that the doctor testified that it was his professional opinion that the decedent's death was caused by the injuries to his head. It was also his impression that the decedent had a slight stroke but that he could not definitely state whether this occurred before or after the fall.

This evidence was sufficient to justify the findings of the compensation authorities: *Mosser v. Mt. Union Borough,* 158 Pa. Superior Ct. 277, 279, 44 A. 2d 762.

Judgment affirmed.