# Purnell v. Wolffe

*Bert E. Zibelman*, for plaintiff.
*Raymond J. Porreca*, for defendant.

CHUDOFF, J., August 3, 1964.—In this workmen's compensation case the referee and the board both found in favor of claimant and awarded her compensation based upon total disability. Therefore, the only question before us is whether there was sufficient evidence in the record to sustain the findings of fact and the award as made: Gouldner v. Seltzer Coal Co., 190 Pa. Superior Ct. 115 (1959) ; Cunningham v. Guerina, 188 Pa. Superior Ct. 288 (1958). It has well been established by our appellate courts that the board is the final fact finding body and its findings of fact will not be set aside unless there was a capricious disregard of competent evidence: Paulin v. Williams & Co., Inc., 122 Pa. Superior Ct. 462 (1936) ; Walker v. Aluminum Company of America, 185 Pa. Superior Ct. 355 (1958) ; or if the board erred in applying the law to the facts: Lee v. McMinn Industries, Inc., 167 Pa. Superior Ct. 501 (1950).

Claimant was employed by the Wolffe Hospital as a

practical nurse. On September 17, 1961, while in the employ of defendant, she sustained injuries while assisting an infirm hospital patient, an elderly man of approximately 175 pounds, from a canister chest-high whirlpool bath.

Claimant was admitted as an in-patient in the Wolffe Clinic on September 18, 1961, and remained there until approximately October 18, 1961.

Upon her release from the hospital, because of her continued pain and stagnation of improvement, she was referred by her treating doctor to Dr. Abraham Myers, an orthopedic surgeon.

Claimant was admitted to Jefferson Medical College Hospital on January 25, 1962, where extensive tests and a myelogram were performed. The results of these tests confirmed Dr. Myers' previous diagnosis of a herniated disc.

Prior to the accident claimant had not experienced any difficulty with her back nor was there any evidence of such from her history.

Defendants petitioned the board to terminate the total disability payments received by claimant at the rate of $28.61 per week, as of November 26, 1961, alleging that said total disability ended on or about that date and that her injuries were not such as to warrant a finding of a total disability.

On March 6, 1963, Referee Alessandroni dismissed defendants' petition and the board, by an order dated January 9, 1964, affirmed the order of the referee. This appeal then followed to the common pleas court.

After reviewing the record we are of the opinion that the findings of fact made by the referee, which were adopted and affirmed by the board, were based upon substantial and credible evidence and we, therefore, dismissed defendants' appeal. An appeal was then filed in the Pennsylvania Superior Court and this opinion is written in accordance with Rule 46 of that court.

Defendants first contend that the finding of fact no. 3, "that as a result of the accident of September 17, 1961, the claimant suffered a lumbar disc herniation" was in error in that such was not based upon competent evidence.

Defendants, in their brief, argue that Dr. Myers based his findings from a study made by another doctor and not by diagnosis of his own. A review of the record discloses that this is not the case.

Dr. Myers testified (n. t. 32) that he made his diagnosis of a herniated disc, L-4 and L-5, and then had claimant admitted for a myelogram. Dr. Myers also testified as follows (n. t. 56) :

"Q. Now, you had her committed to Jefferson on June 25, 1962; is that right, Doctor?

"A. That's right, yes.

"Q. And your purpose was to have a myelogram performed?

"A. Yes.

"Q. Who performed the myelogram?

"A. The x-ray department.

"Q. That was Dr. Edicen. As part of that procedure, there are laboratory studies, too, are there not Doctor, involved?

"A. Sometimes. You can send the fluid away for protein studies if you want to, but it's only substantive findings. If you get a positive finding you don't usually bother.

"Q. Well, would you not do this yourself?

"A. No, the lab would do it.

"Q. So, we have the myelogram done by another doctor and the lab studies, if any, done by the laboratory department, not yourself?

"A. Yes.

"Q. And you are relying on those for your opinion today?

"A. Yes.

"Q. And I understand your opinion today is just a herniation?

"A. I am sure that it is a herniated disc.

"Q. I thought you said just—

"A. The x-ray said that. I say she has a herniated disc, positively.

"Q. And you are basing your opinion on what?

"A. On *my clinical examination*, on *her history of pain*, the *onset of pain*, and the *physical findings that I found*, and the x-ray studies and the Myelogram." (Italics supplied).

After a careful review of the record as a whole, we cannot agree with defendants that the board erred in this respect.

Defendants next contend that the board erred in disregarding the evidence that claimant was capable of doing light work and, therefore, the board erred in allowing total disability.

It is their opinion that the case of Cohen v. Doubleday & Co., Inc., 191 Pa. Superior Ct. 106 (1959), is controlling and that, therefore, under the law of that case the board's decision is in error. With this we cannot agree.

The record discloses that in Dr. Kaplan's opinion claimant might be able to obtain "light work" as a practical nurse. However, he also stated that, "there is a strong point she might not be hired, and such would depend upon the need for an incapacitated nurse." The Pennsylvania Supreme Court, in Unora v. Glen Alden Coal Co., 377 Pa. 7 (1954), speaking through Justice Musmanno, stated at page 13:

"Where the injured person can handle only a specially-created job, one light of effort and responsibility but laden with rest and comfort (employment plums that do not often dangle from the tree of everyday economics) the burden is on the defendant-employer to show that such a job is in fact within reach. If proof

of that fact is not presented, the claimant then is entitled to a finding of total disability."

In the Cohen case the defendant-employer created a job specifically tailored for the claimant and for the services which he was able to perform and paid him wages in excess of the workmen's compensation schedule of payments.

It is worthwhile to repeat that claimant in this case is a practical nurse and, as such, her duties would vary from carrying a bedpan to lifting a patient. These duties so required of claimant, in our opinion, would sufficiently bar her from seeking or obtaining such work. Such employment, if she were able to obtain it, is, and we quote, "employment plums that do not often dangle from the tree of everyday economics."

It is our opinion that defendants have not met their burden as set forth in the Unora case, supra.

Defendants next contend that claimant's refusal to undergo surgery bars her recovery as a matter of law. Dr. Myers testified concerning the operation and the recovery period as follows (n. t. 44-6) :

"Q. Doctor, you indicated, I believe in your report, a spinal fusion would be necessary; is that correct?

"A. Yes.

"Q. Would you explain to us what a spinal fusion is and what it will do for the claimant if successfully performed?

"A. At the same time the laminectomy is done to remove the disc in order to strengthen the bones and support the lower back basis internally instead of externally with support. The bones are joined by bone graft or bone formation, bringing the bones around the removed disc so the vertebrae is strengthened.

"Q. How long would such an involvement take? I don't mean the actual operation, but the recuperation thereafter as well?

"A. Six months to a year. They usually wear a sup-

port for about six months and they gradually rehabilitate. It takes a year before this is completely healed.

"Q. Doctor, is there any degree of certainty in such an operation?

"A. Well, the man is relieved, but we are not sure about the ability to perform heavy work until about a year goes by. Most patients are unable to perform heavy labor.

"Q. Now, Doctor, in your opinion, expert and medical opinion, will the claimant be able to resume this type of work heretofore done?

"A. She wouldn't be able to lift patients. She will have a permanently weak back. These patients are, following surgery, advised to avoid strenuous work which requries heavy lifting."

The sum and substance of Dr. Myers' testimony is that claimant would not be able to lift patients and she would have a permanently weak back as a result of the operation. From this testimony we are of the opinion that the board's decision is amply substantiated by credible evidence. See Ream v. Saxman Coal & Coke Co., 191 Pa. Superior Ct. 408 (1959), reversed for other reasons.

Defendants' last contention is that the finding of fact no. 2 is a conclusion of law and that the board erred in not making a specific finding indicating the basis for its award.

Risking repetition, it has been well settled that where there is conflicting testimony it is for the board to resolve the conflict and on appeal we are limited to such consideration of the testimony to ascertain whether the record contains sufficient evidence to support the findings of the compensation authorities. The board is the final fact-finding body and we cannot set their findings aside unless there was a capricious disregard of competent evidence: Cohen v. Doubleday & Co., supra;

Gouldner v. Seltzer Coal Co., et al., supra; Paulin v. Williams & Co., Inc., supra.

After reviewing the entire record we are of the opinion that there is sufficient and competent evidence to substantiate the findings of fact and conclusions of law made by the board. We, therefore, dismissed defendants' appeal.