Helen Czankner, Widow of Andrew Czankner, Deceased, Appellant, *v.* Sky Top Lodge, Inc. and American Mutual Insurance Co., Insurance Carrier, and Workmen's Compensation Appeal Board, Appellees.

Argued June 7, 1973, before Judges CRUMLISH, JR., KRAMER and BLATT, sitting as a panel of three. Reargued February 5, 1974, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR. did not participate.

*Harry P. O'Neill, Jr.,* with him *Epstein, O'Neill & Utan,* for appellant.

*George E. Clark, Jr.,* with him *Cody H. Brooks,* for appellees.

OPINION BY JUDGE BLATT, August 16, 1973:

This is a workmen's compensation case, in which the sole issue is whether or not there was sufficient medical testimony presented by the claimant to establish a causal connection between an alleged accident and the subsequent death of Andrew Czankner (decedent).

The decedent was employed by Sky Top Lodge, Inc. (employer), on November 1, 1967, when, as the workmen's compensation referee found, "the decedent was helping to unload bags of lime from a chute; he braced himself to catch a bag which weighed approximately 80 pounds, extended his arms to stop [the] bag from falling to the ground, and felt a pull in his right inguinal region." On February 27, 1968, the decedent was operated on for the repair of a right inguinal hernia, and on March 13, 1968, while still in the hospital, he died. The decedent's widow (claimant) thereafter filed a claim petition pursuant to the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, 77 P.S. §1 et seq. Following a hearing, the referee found that the decedent had suffered a hernia

due to an accident in the course of his employment[1] and that the operation for the hernia resulted in a pulmonary embolism which was the cause of death. Compensation was therefore granted.

On appeal, in a decision dated February 8, 1973, the Workmen's Compensation Appeal Board (Board), without taking any additional evidence, reversed the decision of the referee on the basis that the medical testimony relied on by the referee as to the cause of death was equivocal and therefore not competent.

Our scope of review in workmen's compensation cases is limited to a determination of whether or not constitutional rights were violated, an error of law was committed, or any necessary finding of fact was unsupported by substantial evidence. *Arnold Coal & Supply Co., Inc. v. Markle,* 8 Pa. Commonwealth Ct. 107, 300 A. 2d 916 (1973); *Bayuk Cigar Company v. Hawn,* 8 Pa. Commonwealth Ct. 45, 300 A. 2d 837 (1973). And where, as here, the Board has taken no additional evidence, we must rely on the facts as found by the referee if they are supported by sufficient competent evidence. *Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757 (1973).

It is undisputed that approximately two weeks after being operated on for a hernia, during which period he was ambulatory and apparently recovering, the decedent suddenly died. No autopsy was performed. The claimant introduced the testimony of Dr. C. J. Morosini, the decedent's personal physician, to establish a causal connection between the operation and the death.

---

[1] The employer has not disputed that the decedent suffered from a hernia (and in fact its insurance carrier arranged for the operation), but has consistently denied that the hernia was the result of any accident sustained in the course of decedent's employment. The only issue raised by the appellant before this Court, however, pertained to cause of death.

Dr. Morosini had examined the decedent frequently prior to the operation, and although he had not participated in the operation or in the decedent's subsequent care, he had seen the decedent once at the hospital and had subsequently examined the hospital's records regarding the decedent's condition and care. On direct examination, Dr. Morosini testified, in part, as follows: "Q. Now, doctor, what, in your opinion, was the cause of Andrew Czankner's death? A. In my professional opinion the cause of Andrew Czankner's death from statistics, 80% of the cases are due to a massive pulmonary embolism and 20% to coronary infarction. Knowing Andrew Czankner I know that there was no circulatory problem in all the times I have examined him, and, since there were some complications, more than likely the patient—with no reflection on the surgeon but since there was an operation, regardless of the fact of the 80% pulmonary embolism and the 20% coronary infarction, I feel that the operation was a traumatic cause for his death. Q. Do I understand that the operation caused a pulmonary embolism which, in turn, caused the death of Andrew Czankner? BY MR. BROOKS [attorney for employer]: Objection to the question. BY THE REFEREE: Sustained. BY MR. NEILL [attorney for claimant]: Q. Can you, subject to the above objection, tell us whether or not the operation, Number 1, had anything to do with the creation of an embolism? A. Yes. Q. And this is your professional opinion? A. My professional opinion would be that the operation was the causative factor, first and foremost; secondly, in my opinion, due to the suddenness with which it hit the circulation, that the death was due, more than likely, to a pulmonary embolism. Q. Sometimes our courts frown upon the term 'more than likely,' and I ask you if in your professional opinion you would give us a statement of your opinion of the cause of death. A. *Yes, I would say that the exact cause of*

*death was due to a pulmonary embolism.*" (Emphasis added.) On cross-examination, Dr. Morosini testified: "Q. Since you state you did not see Mr. Czankner at or about the time he died and since you had not seen him for at least a week prior to his death and you really took no part in his care or treatment while in the hospital, is it fair to state that your opinion of a pulmonary embolism is in reality based on these percentage figures that you have already made reference to? A. No, not in reality on the percentages, but also because here is a man that I have observed for many years without any circulatory problems, without any chest pain, and with a normal EKG. So I can give my opinion that it was not a cardiac case. Q. But, doctor, the very fact that there are these percentages points up, does it not, that it is likely or not an impossibility that Mr. Czankner's death was the result of a coronary infarct? A. I can't justify my opinion because there was no autopsy. Q. And you are telling me that you would need an autopsy to justify your coronary infarct or pulmonary embolism? A. Right. Q. So without that, doctor, aren't you really saying, at best, that it is possible that Mr. Czankner died from a pulmonary embolism, also it is possible that he died from a coronary infarction? A. That is possible. Q. Isn't that really your opinion, that you are dealing with possibilities? Either one is possible, is it not? A. Right. Q. And to express a medical opinion as to which was the case you would need an autopsy, would you not? A. Yes, for proof of death. Q. Otherwise you are giving us odds four to one? A. Take it or leave it, that's it." It was the above testimony which the Board found to be equivocal. We disagree.

It is certainly true that where, as here, "there is no obvious causal relationship between the employee's injury and the alleged accident unequivocal medical testimony is necessary to establish the causal connection."

*Hagner v. Alan Wood Steel Company,* 210 Pa. Superior Ct. 473, 476, 233 A. 2d 923, 925 (1967). "In such event the medical witness must testify, not that the injury or condition might have, or even possibly did, come from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. . . . A less direct expression of opinion does not constitute legally competent evidence. . . ." *Washko v. Ruckno, Inc.,* 180 Pa. Superior Ct. 606, 609, 121 A. 2d 456, 457 (1956).[2]

A close examination of Dr. Morosini's testimony, however, makes it clear that in his professional opinion the cause of death was a pulmonary embolism resulting from the hernia operation. It is true that on cross-examination he agreed there might be another possible analysis, but he never did change his unequivocal opinion expressed in his direct examination—"I would say that the exact cause of death was due to a pulmonary embolism." A quotation from *Gouldner v. Seltzer Coal Company,* 190 Pa. Superior Ct. 115, 150 A. 2d 879 (1959), another case in which there was an issue of the definiteness of medical testimony as to an employee's death, is appropriate here. The doctor in that case also agreed to possible alternate causes of death during cross-examination, but the court stated: "In our opinion the doctor did not compromise or contradict his previously expressed opinion as to the cause of death. He merely stated that the cause of death could only be definitely determined by an autopsy but it was his professional opinion from the clinical examination that the

---

[2] In addition, *see Mohler v. Cook,* 205 Pa. Superior Ct. 232, 209 A. 2d 7 (1965) ; *Lingle v. Lingle Coal Company,* 203 Pa. Superior Ct. 464, 201 A. 2d 279 (1964) ; *Ferlazzo v. Harbison-Walker Refractories Company,* 200 Pa. Superior Ct. 390, 189 A. 2d 189 (1963) ; *Bednar v. Westinghouse Electric Corporation,* 194 Pa. Superior Ct. 10, 166 A. 2d 305 (1960) ; *Grentz v. Danny's Restaurant,* 187 Pa. Superior Ct. 625, 145 A. 2d 883 (1958).

death was caused by the cerebral contusion." 190 Pa. Superior Ct. at 118, 150 A. 2d at 881. Similarly, *see Hagner, supra.*

It is true that Dr. Morosini did not have the benefit of an autopsy or of an extensive examination of decedent before his death, but " '[t]he cause of death is not required to be established to be a medical certainty, nor is an autopsy an absolute essential in cases of accidental death. . . . The conclusions [of the medical witness] are based upon a chain of circumstances in logical sequence, pointing to a causal connection between accidental injury and death.' " *Parks v. Winkler,* 199 Pa. Superior Ct. 224, 227, 184 A. 2d 124, 126 (1962).

Dr. Morosini's testimony was sufficiently competent and unequivocal to justify the findings of the referee. The testimony was, of course, contradicted by that of other competent medical witnesses, but, where there is "a conflict of medical opinion, it is the province of the compensation authorities [in this case the referee] to decide which conclusion will be adopted. . . ." *Smith v. Pullman-Standard Car Manufacturing Co.,* 194 Pa. Superior Ct. 263, 269, 166 A. 2d 299, 302 (1960).

For the above reasons, therefore, we enter the following

### ORDER

Now, August 16, 1973, it is hereby ordered that judgment be entered in favor of Helen Czankner and against Sky Top Lodge, Inc. and/or its insurance carrier, American Mutual Insurance Co., for compensation at the rate of $34.00 per week beginning March 13, 1968 and continuing thereafter for a period of 500 weeks ending October 12, 1977 when compensation is terminated, all within the terms and limits of the Pennsylvania Workmen's Compensation Act, including legal interest on deferred installments.

Opinion by Judge Blatt, April 23, 1974:

Andrew Czankner (decedent) died on March 13, 1968, approximately two weeks after having undergone an operation for the repair of a right inguinal hernia. His widow, Helen Czankner (claimant), timely filed a fatal claim petition for workmen's compensation benefits alleging that the decedent's death was a direct result of the hernia operation and that the hernia had been caused by an accident suffered in the course of his employment with Sky Top Lodge, Inc. (Sky Top). A referee found in the claimant's favor and awarded benefits, but, on appeal, the Workmen's Compensation Appeal Board (Board), in a decision dated February 8, 1973, reversed the referee's order solely on the basis that the medical testimony presented by the claimant as to the cause of death was equivocal and, therefore, not competent. On appeal to this Court we reversed the Board and entered judgment for the claimant.[1] Sky Top thereafter filed a Petition for Reargument which we have granted.

Where, as here, the referee has found in favor of the party carrying the burden of proof (in this case, the claimant) and the Board has heard no additional evidence, our scope of review is limited to a determination of whether or not constitutional rights were violated, an error of law was committed or any necessary findings of fact, as found by the referee, were unsupported by substantial evidence. *Leipziger v. Workmen's Compensation Appeal Board and Guida*, 12 Pa. Commonwealth Ct. 417, 315 A. 2d 883 (1974). It is here the province of the referee, not the Board, to consider the credibility of the witnesses before it. *Malocheski v. Workmen's Compensation Appeal Board and Consoli-*

---

[1] *Czankner v. Sky Top Lodge, Inc. and Workmen's Compensation Appeal Board*, 13 Pa. Commonwealth Ct. 220, 308 A. 2d 911 (1973).

*dated Cigar Corporation,* 12 Pa. Commonwealth Ct. 430, 316 A. 2d 81 (1974).

It is undisputed that the decedent had a right inguinal hernia for which he underwent an operation, and, in fact, Sky Top's insurance carrier arranged for the operation. The questions at issue are the cause of the hernia and whether or not the operation, in turn, caused the decedent's death.

The testimony established that the decedent had worked for Sky Top as a laborer from April to November of each year for the eight years preceding his death. The claimant testified that, when the decedent returned from work one day in early November of 1967 (the exact date is somewhat in dispute), he showed her a large lump or swollen condition on the lower part of his body which he did not have prior to going to work that day. She testified further that he told her he had injured himself at work while unloading a truck. Dr. Anthony J. Cummings, a witness for the defendant, testified that he had examined the decedent on November 16, 1967 at the request of the insurance carrier and that the history given him by the decedent indicated that he had been injured while unloading bags of lime from a trailer at work. The claimant introduced, without objection on this issue,[2] a hospital report which indicated that the decedent had suffered an accident while unloading lime at work. Lastly, the claimant introduced an accident report, dated November 18, 1967, and made out by Sky Top's own nurse upon information given to her by the decedent, which stated that the decedent was helping to unload bags of lime weighing about 80 pounds each from a truck on November 10, 1967, that he attempted to catch one bag to stop it from falling and that he then felt a pull in his right inguinal area.

---

[2] Objection was made only to the report being offered as substantive evidence of medical opinions.

The referee found as a fact that the decedent had suffered a compensable accident while unloading the bags of lime. Sky Top argues that this finding is not based on competent evidence because the testimony presented by the claimant was either circumstantial or hearsay. We believe, however, that this case is controlled by our Supreme Court's decision in *Cody v. S. K. F. Industries, Inc.*, 447 Pa. 558, 291 A. 2d 772 (1972), and we cannot find that the referee erred in making the above noted finding of fact.

There is no doubt that much of the testimony presented on the claimant's behalf concerning the alleged accident was hearsay and, standing alone, would not be competent evidence upon which to base an award. But as the Court noted in *Cody, supra,* where the facts are sufficiently established by circumstantial evidence, "hearsay testimony not inconsistent therewith, if relevant and material to the fact at issue, may be considered for the additional light, if any, that it throws on the matter." 447 Pa. at 571, 291 A. 2d at 778. Similarly, the happening of an accident followed by death may be established by circumstantial evidence, *Cody, supra,* and the claimant's observation of the lump on the decedent's body, which had not existed when he had gone to work, was such evidence.

The most important holding in *Cody, supra,* however, was the Court's reconsideration of the rule that statements made to a physician which related to the cause of an injury were not admissible unless they were part of the res gestae. The Court carved out an exception to this rule where, in a workmen's compensation proceeding, there is an unwitnessed occurrence and the party involved has died. The rationale for such a position was stated as follows: "Such an exception to the hearsay rule can be justified on grounds of circumstantial guarantee of trustworthiness and necessity. As to trustworthiness, for a patient to misrepresent to a treat-

ing physician the cause of his physical injury would be totally contrary to his most vital concern of saving his life and restoring his health. Moreover, statements as to cause, as long as they are germane to treatment are inseparable from the description of the injury and the pain it is causing the declarant. We believe that as long as there are no circumstances casting suspicion on the genuineness of the utterances, statements as to cause clearly meet the trustworthiness test." (Footnote omitted). 447 Pa. at 567, 291 A. 2d at 776.

. . . .

"We believe this exception to the hearsay rule represents a more flexible approach to the problem, and is more consonant with the demands of justice and more adequately represents the policies of the Workmen's Compensation Act." (Footnote omitted). 447 Pa. at 568-569, 291 A. 2d at 777.

We believe that the decedent's statement to Dr. Cummings meets this test. In view of the decedent's condition at the time and in view of the surrounding circumstances, it seems unlikely that he would have lied to the physician as to how his injury occurred. It is true that there might be some question as to whether or not this accident could have gone unwitnessed, but the only indication that it might have been witnessed was in the accident report, a report which Sky Top has strongly argued was not admissible.[3] It is interesting to note, moreover, that Sky Top had this report since November 18, 1967, long before the time of the hearing, but that the claimant was apparently unaware of its existence until almost the end of the final hearing before the referee, when it first came to her attorney's attention.

---

[3] Because of the disposition we make of this case, we need not determine whether or not this report was admissible pursuant to Section 2 of the Act of May 4, 1939, P. L. 42, 28 P.S. §91b.

Considering the doctor's history as given to him by the decedent, the hospital report, and the observations of the claimant, we believe that there was sufficient competent evidence, direct and circumstantial, upon which the referee made a finding of fact that the decedent suffered a compensable accident while in the course of his employment.

As to the issue of causation, we adopt and reaffirm our previous opinion thereon as set forth in *Czankner, supra.*

For the above reasons, therefore, we issue the following

### ORDER

Now, April 23, 1974, we reverse the order of the Board and enter judgment in favor of Helen Czankner and against Sky Top Lodge, Inc. and/or its insurance carrier, American Mutual Insurance Co., for compensation at the rate of $34.00 per week beginning March 13, 1968 and continuing thereafter for a period of 500 weeks ending October 12, 1977 when compensation shall be terminated, including legal interest on deferred installments, as well as burial expenses in the amount of $750.00.