Alan L. Dunlap, Appellant, *v.* Workmen's Compensation Appeal Board, United Parcel Service and Liberty Mutual Insurance Company, Insurance Carrier, Appellees.

Argued September 11, 1974, before Judges KRAMER, MENCER and BLATT, sitting as a panel of three.

 

*Raymond F. Keisling*, with him *Will & Keisling*, for appellant.

*James S. Ehrman*, with him *Clem R. Kyle* and *James N. Diefenderfer*, for appellees.

OPINION BY JUDGE BLATT, January 13, 1975:

Alan Dunlap (claimant) was employed by United Parcel Service (employer), to sort parcels on a conveyor belt and load them onto trucks. The claimant allegedly injured his back while at work on July 21, 1971 when, at the instruction of his supervisor, he attempted to remove two heavy tires from one of the employer's trucks. He testified that his job normally entailed only handling parcels weighing up to 50 pounds and that he had never before lifted items such as these tires which were much heavier than 50 pounds. The claimant reported the injury, a probable sprain, to his supervisor. He received medical treatment for his pain and missed about two days of work. Subsequently, on December 24, 1971, while again at work handling packages, he developed more severe pain in his back, with radiation into his left lower extremities. His physician diagnosed lumbar root compression, due to a ruptured disc.

When the claimant's employment was subsequently terminated, he filed a claim petition alleging that his back condition had prevented him from working. He had a hearing before a referee who awarded benefits under the Workmen's Compensation Act and, in doing so, found as a fact that:

"THIRD: On the above date (July 21), while in the course of his employment with defendant, claimant suffered an accidental injury which totally disabled him from January 4, 1972 to April 14, 1973."

The employer appealed to the Workmen's Compensation Appeal Board (Board) which, without taking further testimony, reversed the referee and entered an order dismissing the claim petition. The claimant has now appealed to this Court.

Our scope of review is limited to a determination of whether or not constitutional rights were violated, an error of law was committed or a necessary finding of fact was unsupported by substantial evidence. Where the Board has taken no additional evidence the facts as found by the referee which are supported by sufficient and competent evidence are binding upon the Board and upon us. *Universal Cyclops Steel Corporation v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). In reversing the referee the Board reasoned that the medical testimony presented by the claimant did not adequately establish a causal connection between the July 21 incident and the disabling injury.

The rule of law is such that where there is no obvious causal relationship between the employe's injury and the alleged accident, the medical witness must testify, not that the injury or condition might have, or even possibly did, come from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. *Czankner v. Sky Top Lodge, Inc.*, 13 Pa. Commonwealth Ct. 220, 308 A.2d 911 (1973).

The claimant's medical expert was Dr. Richard E. Hershey who, on direct examination, testified:

"A. Well, I would assume by the history I obtained from him correlating with this at that time (July 21) he probably did some injury which may have predisposed him to the disc. He had back pain and states that the symptoms subsided and was asymptomatic until December 24, which is the first time he complained of pain radiating to the lower extremity, which is the first time he complained of nerve root pain. It is possible at the early injury they can do

injury to the ligaments which predisposes to a ruptured disc.

"Q. To which incident would this be related?

"A. I don't think anyone can say with absolute certainty, but I would say if you can give an answer as close—well, it would be related to the December incident when he developed the severe back pain radiating to the left lower extremity. That is the first I have any history of pain that suggests nerve root involvement. The previous episode in July he complained only of pain in the back which was written off as a sprain, which sounds reasonable, which subsided, according to him, in three days."

On cross-examination Dr. Hershey further testified:

"Q. In your opinion the lifting of these packages on December 24, as I understand it, was the cause of the herniated disc?

"A. No, I think I said this. From the information I have to go on you can't accurately say when the thing actually ruptured. It ruptured and caused nerve root pressure. I qualified it, and I have to be honest from all angles. Potentially, his original injury could have given some ligamentous problems which would have been a predisposing factor.

"Q. Is it because it is a gradual process?

"A. No, it is not an unusual history where they had a previous injury which subsided and with re-injury they have a massive rupture, at which time they get the nerve root symptoms and signs. In other words, what I am saying is not all people who get back pain end up with a ruptured disc. But it is not unusual when you investigate their history and find they have had a previous minor back sprain or what have you."

This testimony clearly does not meet the legal standard necessary to establish causation between the July 21 incident and the disabling injury for Dr. Hershey was

obviously uncertain as to whether or not the July incident contributed to the claimant's subsequent disability. As we read the record, however, it reveals that the claimant's disability resulted either from the December incident alone or from the July and December incidents together, for the claimant testified that he had no back problems prior to July 21, 1971 and there is nothing on the record to suggest any other causes. We may correctly assume, therefore, either (a) that the July injury did not predispose him to the December injury, and the December injury, therefore, occurred independently, or (b) that the July injury did predispose him to the December injury at which time his condition was aggravated.

Thus, under these assumptions, one of which must necessarily be valid, although it cannot be determined which one, the claimant might be able to recover benefits under one of two possible theories: first, for the December injury alone under the "unusual pathological result" doctrine if we assume (a) that the July incident did not predispose him to the December injury. *See A. P. Green Refractories v. Luckey,* 8 Pa. Commonwealth Ct. 172, 301 A.2d 914 (1973); *Gasparovick v. Federal Reserve Bank of Cleveland,* 194 Pa. Superior Ct. 137, 166 A.2d 57 (1961); or second under the "unusual strain" doctrine for the combined effects of the July and December injuries, if we assume (b) that the July incident did predispose him to the December injury. *See Gower v. Mackes,* 184 Pa. Superior Ct. 41, 132 A. 2d 880 (1957).

Under the unusual pathological result doctrine the claimant must establish that (1) he was performing his ordinary and usual work at the time of the December injury; (2) the injury was unexpected; (3) the injury was caused by a definable event or series of events; and (4) a break or change in the physical structure or body tissues occurred. *See Hinkle v. H. J. Heinz Company,* 7 Pa. Commonwealth Ct. 216, 298 A. 2d 632 (1972). Under assumption (a), even though the claimant's back was in

a weakened condition after the July injury, this would not bar a finding that the December injury was compensable under the unusual pathological result doctrine, there being no causal relationship between the two injuries.

Under the unusual strain doctrine the claimant must establish that his July injury resulted from over-exertion or unusual strain encountered in the course of employment, with the doctrine being applied according to the work history of the individual and not according to the work patterns of his profession in general. *Hamilton v. Procon, Inc.,* 434 Pa. 90, 252 A. 2d 601 (1969). Under assumption (b) if the claimant may recover for the July injury he would also recover for the December injury which would not have occurred if the claimant had not been impaired in the original July accident. *Gower v. Mackes, supra.*

Clearly then if the claimant can establish all of the elements, excepting causation, under *both* the unusual pathological result doctrine *and* the unusual strain doctrine he must be granted benefits because his disability resulted either from the December incident alone or from the July and December incidents together.

Unfortunately, however, the referee did not resolve all of the factual issues necessary to determine whether the claimant established the elements requisite to recover under *both* doctrines. Specifically, he determined only that in July "the claimant suffered an accidental injury," but he did not specify whether this injury resulted from an unusual strain.

The claimant testified that he was injured while lifting the heavy tires in July and that this exertion was greater than any he had previously experienced in his work history. The supervisor to whom the claimant reported the injury on July 21, 1971, and who completed the claimant's accident report at the time of the injury, testified, however, that the report showed the claimant to have been injured while lifting parcels. Dr. Hershey himself, in re-

calling the medical history which he received from the claimant, testified that the claimant dated his original injury to July 27, 1971 when, "while at work lifting packages," he strained his back. Although there is conflicting evidence on the issue the referee did not determine whether or not the July injury resulted from an unusual strain. "Where the proper factfinder fails to make a finding on a crucial issue, an appellate court can only remand to cure the error despite the unfortunate delay to the parties." *Greene v. Marger, Inc.*, 12 Pa. Commonwealth Ct. 423, 426, 317 A. 2d 358, 360 (1974). It is necessary that this issue be resolved.

We, therefore, enter the following

ORDER

AND NOW, this 13th day of January, 1975, the order of the Workmen's Compensation Appeal Board, dated January 18, 1974, is vacated and the record is remanded for further proceedings consistent with this opinion.