Monday Shannon and Workmen's Compensation Appeal Board *v.* Southwark Metal Manufacturing Co., and Rockwood Insurance Co. Southwark Metal Mfg. Co. and Rockwood Insurance Company, Appellants.

Argued September 10, 1976, before President Judge BOWMAN and Judges MENCER and BLATT, sitting as a panel of three.

*Leonard S. Lipson,* with him *Alfred Sarowitz,* for appellants.

*Edwin P. Smith,* for appellee.

OPINION BY JUDGE BLATT, December 10, 1976:

Monday Shannon (claimant) was employed by the Southwark Metal Manufacturing Co. (employer) as a general laborer. Among the tasks assigned to him was the packing of large metal containers of air conditioner materials into boxes. On May 16, 1973, while he was removing some of these metal containers from a stack, one of them fell and struck the claimant in his left eye. He reported the accident and was taken to a doctor the next day at the employer's direction.

The examining physician, an internist, recorded a history of blunt trauma to the left eye and noted some physical evidence of the injury about the eye. He then referred the claimant to an associate, Dr. Joseph Hallett, an ophthalmologist. Dr. Hallet saw the claimant on May 22, 1973, and diagnosed a dislocated cataract in the left eye. He also noted the presence of a congenital cataract in the right eye. Dr. Hallett examined and treated the claimant on several other occa-

sions through September 5, 1974, and at that time vision in the left eye had deteriorated to the point where the claimant was considered legally blind in that eye.

A claim petition was filed pursuant to The Pennsylvania Workmen's Compensation Act[1] on February 15, 1974. The employer filed an answer on March 11, 1974, denying all of the material allegations of the petition. The referee took testimony at three hearings. Dr. Hallett testified at two of the hearings, once as the claimant's witness and once as the employer's witness. On July 17, 1975, the referee awarded the claimant compensation for specific loss of the left eye. The Workmen's Compensation Appeal Board (Board), without taking additional evidence, affirmed that portion of the referee's decision awarding compensation for the specific loss of the claimant's eye. This appeal followed.

Our scope of review in a workmen's compensation case, where the party with the burden of proof prevailed below and the Board took no additional evidence, is limited to a determination of whether or not constitutional rights were violated, an error of law was committed or a necessary finding of fact of the referee was unsupported by substantial evidence, leaving questions of evidentiary weight and credibility to the referee. *Mikalonis v. Workmen's Compensation Appeal Board*, 25 Pa. Commonwealth Ct. 166, 361 A. 2d 483 (1976); *Leipziger v. Workmen's Compensation Appeal Board*, 12 Pa. Commonwealth Ct. 417, 315 A.2d 883 (1974). The appellant here argues only that the award for compensation for specific loss of the claimant's left eye was not based on competent medical testimony.

It is a well established rule of law that where there is no obvious causal relationship between an employe's

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq.

injury and the alleged accident, there must be competent medical testimony, not that the injury or condition might have, or even possibly did, come from the assigned cause, but that in the professional opinion of the medical witness the result in question did come from the assigned cause. *Dunlap v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 19, 330 A.2d 555 (1975); *Czankner v. Sky Top Lodge, Inc.,* 13 Pa. Commonwealth Ct. 220, 308 A.2d 911 (1973).

Dr. Hallett, the only medical witness here, appeared at the first hearing as the claimant's witness and testified then on cross-examination:

Q. Doctor, what are the causes for a dislocated cataract?

A. A dislocated cataract can occur first of all from trauma, secondly, they can occur spontaneously. There are certain cataracts that will dislocate without any apparent reason. As a matter of fact, some dislocated lenses occur even in children when they are born that we find.

. . . .

Q. And with an eye having a cataract, that Mr. Monday [sic] had, what sort of blow would it take to dislocate the cataract?

A. It brings up the question of whether or not he had the cataract before the injury. The fact that he has a cataract . . . in the right eye indicates that he may have had cataracts before and it is notorious that eyes that have cataracts are more apt to dislocate than eyes that do not have cataracts. It is possible that he may have had the cataract in that eye before, and it is even possible that this may have dislocated before for all I know. I have no way of telling that.

Q. If you don't have any way of telling it, Doctor, why do you make reference to the trauma

as being the origin of the dislocation in your report?

A. Merely because of the history. It is based on the history that he received a trauma and I assumed that the dislocation was a result of the trauma."

Dr. Hallett appeared at the final hearing as a medical witness for the employer, and, on redirect examination, he further testified:

Q. In making a diagnosis now, Doctor, with all of the facts that you know about this matter at the present time, and reflecting over the entire picture, *can you say that the condition suffered by Mr. Shannon Monday [sic] was as a result of an external trauma?*

A. This *may have resulted* from a trauma of some sort, I think, although I am still amazed that five or six days later he had no evidence of external trauma. I couldn't find it and it is puzzling to that extent, I must confess. In view of the history, *I can only assume that it was due to the trauma.* That is the only thing that I can tell you. (Emphasis added.)

A close examination of this medical testimony clearly establishes that the witness could not state that in his professional opinion the blindness in the claimant's left eye resulted from the injury he sustained at work. It is similar to that presented in *Smith v. Pullman-Standard Car Mfg. Co.*, 194 Pa. Superior Ct. 263, 166 A.2d 299 (1961), where the Superior Court dismissed an appeal from the Workmen's Compensation Appeal Board on the basis of equivocal medical testimony and where the appellant's medical expert testified as follows in response to a question concerning causation:

A. I determined that the condition was a result of it [the accident]. I said it was *very probable and highly possible that it could have occurred.*

I don't know that he didn't injure his ankle someplace else but he gave this history and the fact that he had developed this, I *assumed it was a result of that.* (Emphasis in original.)
194 Pa. Superior Ct. at 266, 166 A.2d at 301.

It is clearly the claimant's burden to prove with unequivocal medical testimony that a causal relationship exists between an injury and an alleged disability. *Smith v. Pullman-Standard Car Mfg. Co., supra.* The medical testimony presented by the claimant here did not sufficiently establish this relationship, and the order of the Board must, therefore, be reversed.

ORDER

AND Now, this 10th day of December, 1976, the order of the Workmen's Compensation Appeal Board is hereby reversed.