James J. Burton, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, The Gambone Organization and Frohmander & Smith, Respondents.

Frohmander and Smith and Allstate Insurance Company, Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, James J. Burton and The Gambone Organization, Respondents.

Argued February 5, 1981, before Judges Blatt, Williams, Jr. and MacPhail, sitting as a panel of three.

*David L. Allebach, Jr.,* for petitioner, James J. Burton.

*Martin J. Fallon, Jr., Swartz, Campbell & Detweiler,* for respondent, Gambone Organization.

*Albert E. Hart, Jr.,* with him *James M. Marsh,* for petitioners, Frohmander and Smith and Allstate Insurance Company.

OPINION BY JUDGE WILLIAMS, JR., July 10, 1981:

Before us for review in this matter are two successive orders of the Workmen's Compensation Appeal Board (Board) concerning the award of total-disability benefits to James J. Burton (claimant). Each of the Board's orders brought a separate appeal to this Court, and we have consolidated those appeals for disposition. This combined matter had its genesis in two distinct petitions filed by claimant Burton to determine which of his two successive employers was liable for workmen's compensation because of a second adverse incident concerning the claimant's back. In the wake of that second incident, the claimant filed a petition to set aside a final receipt he had given his first employer, Frohmander & Smith (F & S), in whose service claimant had originally injured his back. The claimant also filed a claim petition against his succeeding employer, the Gambone Organization (Gambone), in whose service the second adverse incident occurred.

The first of the two appeals before us (No. 2942 C.D. 1978) was taken by claimant Burton from an order of the Board which reversed a referee's entry of an award on the claim petition against Gambone. In so ordering, the Board also remanded the case to the referee to reconsider the evidence as to the petition to set aside the final receipt given to F & S, which

petition the referee had dismissed in the course of imposing total liability on Gambone.

When the referee, on remand from the Board, reconsidered the evidence already of record, he entered a decision setting aside the final receipt that had been given to F & S, the first employer. When the Board affirmed that decision, F & S appealed further to this Court; and that appeal (No. 582 C.D. 1980) is the second of the two instantly before us.

As might appear from the above synopsis, the posture of this matter is slightly complex; thus it is important to detail the stages through which the matter passed en route to this Court.

In January 1974 claimant James J. Burton was employed by F & S as a carpenter, working in the erection of a three story apartment building. While so engaged, the claimant was required to pull loads of "two-by-sixes" from the ground up onto a balcony, using a hoist. On January 31, 1974, as he was pulling one of the loads, the claimant experienced severe and immediate low back pain. As a result he was unable to complete his work that day and left the job site. That same evening claimant consulted an orthopedist, Dr. Elliot Menkowitz; and, shortly thereafter, the claimant was admitted to a hospital where he underwent low-back surgery. That operation entailed removal of a disc at the L-4 level.

After the operation the claimant and F & S, through its insurance carrier, entered into a compensation agreement under which benefits were paid by the carrier from February 7, 1974. The claimant returned to work on May 20, 1974; and on May 30 he executed a final receipt relative to the January 1974 injury.

The claimant continued to work for F & S until November 1974, when he began employment with Gambone. On November 17, 1974, while working for Gam-

bone nailing boards on a porch, claimant experienced severe back pain; and he so advised his foreman on that occasion. Between November 17, 1974 and about January 23, 1975 he continued to work for Gambone, despite a worsening back problem. However, during this interval he again consulted with Dr. Menkowitz. On January 25, 1975 the claimant was readmitted to the hospital, under Dr. Menkowitz's care.

While in the hospital the second time, the claimant again underwent low-back surgery, which included a repeat laminectomy; removal of scar tissue, resulting from the first surgery, on the L-3 to L-5 nerve roots; removal of a disc at the L-5 level; and a repeat removal of a disc at the L-4 level. Following this second operation the claimant continued to experience back pain; as a consequence he had to be hospitalized on several more occasions.

There is no dispute by any party that as of January 25, 1975 the claimant was totally disabled.

In February 1975, the claimant petitioned to set aside the final receipt he had executed in favor of F & S. In April 1975, the claim petition against Gambone was filed. After initial joint hearings a referee entered an interlocutory order directing each employer's insurance carrier to pay one-half the compensation due, pending a final decision. As a result of further hearings the referee entered a decision granting the claim petition against Gambone and dismissed the petition to set aside filed against F & S. Both Gambone and the claimant appealed that decision to the Board: Gambone sought reversal of the imposition of liability; and the claimant sought reversal of the referee's decision dismissing the petition to set aside the final receipt.

In December 1978, the Board sustained Gambone's appeal, concluding that the record did not contain such *competent, unequivocal medical testimony* as would

support an award against Gambone. The Board also concluded that the referee erred in his determination that the claimant had given Gambone the statutorily required notice of injury. The Board's order additionally remanded the case for the referee to reconsider the evidence relative to the petition to set aside F & S's final receipt. From this, the first of the Board's orders, F & S took an appeal to this Court; but that petition for review was quashed as being interlocutory. It was also from this initial order that claimant Burton filed a protective appeal in this Court (No. 2942 C.D. 1978); but that was stayed pending disposition of the remand proceedings directed by the Board. It was the second of the Board's orders, that affirming the referee's post-remand decision, which brought F & S's instant appeal (No. 582 C.D. 1980).

The crux of this combined matter is the nature of the medical evidence that faced the referee's initial decision imposing liability on Gambone and dismissing the petition to set aside the final receipt. That medical evidence consisted of the testimony of three board-certified orthopedic surgeons: claimant's witness, Dr. Menkowitz; Gambone's witness, Dr. William Simon; and F & S's witness, Dr. J. David Hoffman. Most significant for purposes of our present review is the testimony of Dr. Menkowitz and that of Dr. Hoffman.[1]

Dr. Menkowitz testified that the claimant's initial injury and surgery *predisposed claimant to recurrence of the back injury.* With respect to the connection between the claimant's employ with Gambone and the present disability, Dr. Menkowitz stated that the latter occupation *"could cause"* a recurrence of the back problem. However, it was the opinion of this medical

---

[1] The effect of Dr. Simon's testimony was that the claimant's condition was *not* attributable to the Gambone work incident. It appears that the only specific reference to this testimony is in the brief of respondent Gambone, and there just passingly noted.

witness that the claimant's condition, adhesive arachnoiditis, was not caused by any incident occurring in November 1974, *but rather was caused by the original injury and the original surgery* that followed.

Dr. Hoffman, the medical witness for F & S, pointed out that the claimant was not disabled until after experiencing sudden stress during the November 1974 incident in the employ of Gambone. According to Dr. Hoffman, the incident *precipitated* the disability. However, this witness additionally stated that the first surgery inclined the claimant to further strain which could produce symptomology and in turn produce disability. Dr. Hoffman acknowledged that claimant suffered impairment as a result of the original injury and initial surgery. The doctor also admitted that he could not disassociate the claimant's condition from the earlier injury. Speaking of the November 1974 incident, Dr. Hoffman gave the opinion that there appeared to be a "cause and effect relationship between the recent exacerbation and this incident and the surgery performed." According to Dr. Hoffman, the second surgical operation on the claimant was invited by the stress he experienced while working for Gambone.

We take first the contention raised by claimant Burton's appeal that there was sufficient evidence to support his award against Gambone. It is now well established in our law that where there is no obvious causal connection between the medical condition that is the subject of a claim and the work incident in question, the claimant must prove such connection by unequivocal medical testimony. *Shannon v. Southwark Metal Manufacturing Co.*, 27 Pa. Commonwealth Ct. 463, 366 A.2d 960 (1976). In that regard, the medical witness must testify not that the injury or condition might have, or even possibly did, come from the assigned cause; rather, the medical witness must testify

that in his professional opinion the result in question *did* come from the assigned cause. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977); *Shannon, supra; Dunlap v. Workmen's Compensation Appeal Board,* 17 Pa. Commonwealth Ct. 19, 330 A.2d 555 (1975). Insofar as the claim petition against Gambone is concerned, we must agree with the Board that the medical testimony before the referee did not unequivocally establish the requisite causal connection between the claimant's disability and the incident that occurred while the claimant worked for Gambone. As to that, the most the claimant's medical witness, Dr. Menkowitz, said was that the latter occupation *"could cause"* a recurrence of the back problem. And certainly, the testimony of Dr. Hoffman could not be deemed unequivocal.[2]

Appellant F & S raises two interrelated central arguments: (1) that the Board had no legal power to reverse the referee's findings that resulted in his dismissal of the petition to set aside the final receipt; and (2) that it was improper for the Board to remand for reconsideration of the evidence bearing upon that petition. As for the first, the sum of F & S's argument is that the Board was legally bound by the referee's original finding that the Gambone incident, of November 1974, caused a "new" medical problem or a new compensable injury. For this argument F & S relies on *Universal Cyclops Steel Corp. v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). However, this argument must fail because it ignores the full extent of the principle set forth in *Universal Cyclops*: For in that case this Court made it clear that the Board is bound by the referee's findings only when

---

[2] Having concluded that the award against Gambone was not supported by adequate proof of causation, we need not consider the issue of statutory notice.

they are supported by competent evidence. *Accord, Page's Department Store v. Velardi,* 464 Pa. 276, 346 A.2d 556 (1975).

Moreover, the above principle in *Universal Cyclops* is an expression of what is mandated by Section 423 of The Pennsylvania Workmen's Compensation Act.[3] This Section, in pertinent part, declares that:

[T]he [B]oard may disregard the findings of fact of the referee *if not supported by competent evidence. . . .* (Emphasis added.)

When, in the instant matter, the referee found that the Gambone incident constituted a new compensable injury, that finding rested on medical testimony that was equivocal. Such testimony does not constitute legally competent evidence. *Badaracco v. Workmen's Compensation Appeal Board,* 48 Pa. Commonwealth Ct. 321, 409 A.2d 529 (1980); *Westmoreland Casualty Co. v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 307, 387 A.2d 683 (1978).

Accordingly, by force of Section 423 of the Workmen's Compensation Act, it was within the Board's power to disregard the medical testimony, insofar as that evidence was incompetent to support either the award against Gambone or the tandem dismissal of the petition to set aside the final receipt given to F & S.

F & S's challenge to the Board's remand order rests on an assertion that there was sufficient evidence to support the referee's initial dismissal of the petition to set aside the final receipt. That assertion is invalidated by what we have already concluded about the nature of the medical testimony underlying both of the referee's initial decisions. F & S also argues that the referee had no power to enter a different decision, after remand, on the same evidence. However, the

---

[3] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §854.

decision of our state Supreme Court in *Borovich v. Colt Industries,* 492 Pa. 372, 424 A.2d 1237 (1981), *rev'g, Colt Industries v. Borovich,* 44 Pa. Commonwealth Ct. 493, 403 A.2d 1372 (1979), makes it clear that a referee does have such decisional power.

The core issue of this entire combined matter is whether the claimant's undisputedly compensable disability was caused by the prior injury he suffered while working for F & S or by the intervening incident that occurred while he was employed by Gambone. Which of those two events caused the disability was a question of fact for the referee. *See City of Williamsport v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 618, 423 A.2d 817 (1980); *United Industrial Maintenance v. Workmen's Compensation Appeal Board,* 46 Pa. Commonwealth Ct. 156, 405 A.2d 1360 (1979). Of course, the referee's determination must be based on competent evidence. In our view, the referee's second decision, setting aside the final receipt, was supported by competent and substantial evidence: the opinion of Dr. Menkowitz, the claimant's medical witness, that the initial injury and the initial surgery predisposed the claimant to recurrence of the back problem, and that the claimant's disability was caused by the initial injury and initial surgery, rather than by the intervening Gambone incident. The Board was correct in affirming the referee's second decision.

For the reasons set forth in this opinion, we affirm the Board's orders in both of the instant appeals.

## Order

And Now, the 10th day of July, 1981, we Order as follows:

1. As to the above No. 2942 C.D. 1978, that is, the appeal of James J. Burton from the order of the Workmen's Compensation Appeal Board at Docket

No. A-75083 dismissing his Claim Petition against the Gambone Organization, the said appeal is hereby dismissed.

2.   As to the above No. 582 C.D. 1980, the order of the Workmen's Compensation Appeal Board at Docket No. A-77576 is hereby affirmed.

Judge WILKINSON, JR. did not participate in the decision in this case.